THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDWARD PAGE, Defendant-Appellant.

Fifth District   No. 78-156

Opinion filed July 13, 1979.

John H. Reid and E. William Hutton, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

James E. Dull, State's Attorney, of Mt. Vernon (Raymond F. Buckley, Jr., and Stephn J. Maassen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant, Edward Page, appeals from the order of the Circuit Court of Jefferson County finding him in direct criminal contempt of court. Defendant's sole contention is that he was not proven guilty of contempt of court beyond a reasonable doubt.

The facts established that on June 1, 1977, a $1,000 judgment was entered in small claims court against defendant and in favor of Paul Larry Grothoff. After defendant failed to satisfy the judgment, a citation to discover assets was filed requesting defendant to appear in court with a list of his personal property valued over $200. At the hearing on the citation held on August 17, 1977, defendant testified as follows regarding his personal assets:

"Q. Do you own any items of personal property such as a stereo or radio units?
A. Yeah, I've got a color T.V. and stereo.
Q. Is your color T.V. paid for?
A. Yeah.
Q. What kind is it?
A. Well, I think it's an Admiral.
Q. What size is it?
A. Nineteen inch.
Q. Is it portable?
A. Uh-huh.
Q. Is it paid for?
A. Yes.
Q. What type of stereo do you have?
A. It's an Electrophonic I believe.
Q. Is it paid for?
A. Yes.
Q. What's it worth?
A. Three or four hundred dollars.
Q. What's your color T.V. worth?
A. Three hundred dollars. It's used."

After defendant testified, Grothoff's counsel indicated that his client would accept monthly payments on the judgment, and added that seizure of the above property was not desired unless necessary. Defendant responded:

"THE DEFENDANT: I have nothing to say other than I contest that. I myself do not owe the money.

‑ THE COURT: Well, judgment has been entered against you.

THE DEFENDANT: I realize that.

THE COURT: And you do owe it.

THE DEFENDANT: I won't pay it.

THE COURT: What?

THE DEFENDANT: I will not pay it, absolutely not.

THE COURT: You will not pay it?

THE DEFENDANT: That's what I said.

THE COURT: Mr. Page, if you fail to pay this Order, you can be held in contempt of court and be put in jail.

THE DEFENDANT: I've heard that."

The court then issued a writ of seizure for the color T.V. and stereo.

When the property was not seized pursuant to the court's order, a second hearing took place on December 14, 1977. At the hearing, defendant claimed that no one representing Grothoff had attempted to seize the property in his presence and admitted that he had made no effort to pay the judgment. He further acknowledged his prior testimony that he owned the television set and the stereo. He also revealed that he had acquired a 1968 Buick for $721 and that his father-in-law, who financed the purchase, had a lien on the automobile. The court then ordered the stereo, television and automobile to be seized immediately.

On December 22, 1977, Cheryl Page, defendant's wife since October 10, 1977, filed a petition to intervene seeking to set aside the order of seizure. At a hearing on December 29, 1977, Ms. Page established that the television had been given to her by her parents as a birthday gift in 1972 and that she had purchased the stereo in 1977. She added that the title to the Buick, on which her father had a lien, was in both her name and defendant's. She considered the television set and stereo to be her property and stated that if anyone had testified to the contrary such testimony would have been false.

Another hearing on the petition to intervene was held on January 6, 1978, before the same judge who had presided at the proceedings of August 17 and December 14. Ms. Page again testified that the television set and stereo were her property and added that defendant had no property interest in either item. She then testified as follows:

"Q. Were you aware that in the past on two different occasions

Edward A. Page has testified in this court that he owned the stereo and the television?

A. No, I wasn't.

Q. Did he tell you that?

A. Yes, he did.

Q. He told you that he testified that those things were his property?

A. Yes, he did.

Q. That wasn't true, was it?

A. No, it wasn't."

Defendant testified that the testimony of his wife was completely true. He admitted that his testimony at the prior hearings was false but added that he "wasn't really trying to lie to the Court." He further testified that he believed the items belonged to his wife and himself because they lived together but conceded that he knew that legal ownership was held by Cheryl.

The court found the allegations of the petition to intervene to be true and ordered the return of the television set, stereo and Buick to the wife. The court also stated that defendant was "very likely" in direct contempt of court on account of his testimony and set a date for a contempt hearing. At the ensuing hearing held on February 10, 1978, the court found defendant in direct contempt of court, sentenced him to two weeks' imprisonment and fined him $300. In its written order, the court found that defendant had made false statements knowing them to be untrue at the time they were made. It added that defendant interfered with the administration of justice by permitting "this court to seize property which were in fact not his" and therefore held defendant in direct contempt of court.

■▌ "Contempt" has been generally defined as any act or conduct calculated to embarrass, hinder or obstruct the court in its administration of justice or otherwise undermine its authority. (*People ex rel. Kunce v. Hogan*, 67 Ill. 2d 55, 364 N.E.2d 50 (1977), *cert. denied*, 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750 (1978); *People v. Collins*, 57 Ill. App. 3d 934, 373 N.E.2d 750 (1978).) A direct criminal contempt occurs when the contemptuous act either takes place in the very presence of the judge or is committed outside of his presence but within an integral part of the court. (*People ex rel. Kunce v. Hogan*; *People v. Winchell*, 45 Ill. App. 3d 752, 359 N.E.2d 487 (1977).) To sustain a conviction for direct criminal contempt on the basis of perjury the following requisites are needed:

"'* * * it must appear beyond a reasonable doubt from the personal knowledge of the court, or by admissions from the lips of the defendant himself in open court, and in the presence of the

court, and from no other source whatsoever, that (1) the representations so made were false and untrue when made; (2) that the defendant knew of their falsity when he made them; and (3) that he made them knowing their falsity and with a wilful and malevolent intention of assailing the dignity of the court, or of interfering with its procedure and the due administration of justice. . . .' " *People v. Bialek*, 31 Ill. App. 2d 281, 284, 175 N.E.2d 278, 280 (161), quoting from *People v. Hille*, 192 Ill. App. 139 (1915).

Defendant concedes that he made false statements in open court; however, he maintains that the evidence was insufficient to sustain a finding of any "wilful and malevolent" intent. In support of his position, he argues that under the facts presented it was reasonable as "a practical matter" for him to assume that he owned the television set and stereo. Furthermore, he argues that his false statements consisted solely of responses to "loaded" questions posed by plaintiff's counsel. The State contends that a contemptuous state of mind may be inferred from proof of the surrounding circumstances and from the character and actions of the defendant (*People ex rel. Kunce v. Hogan*) and that the surrounding circumstances and actions of defendant in the present case indicate defendant's attempt to interfere with the court's administration of justice beyond a reasonable doubt. We agree.

A careful review of the record reveals that defendant knew that his statements both at the August 17 and December 14 hearings were false at the time when made. He admitted at the January 6, 1978, hearing that he knew his wife had legal ownership of the stereo and television set at all times. He nevertheless argues on appeal that he was confused by the concept of legal ownership, was confused by counsel's questioning, and was therefore confused in his testimony. Defendant's argument is without merit. Counsel for plaintiff conducted a proper and straightforward inquiry into defendant's assets and did not attempt to mislead or confuse him at trial. It is also clear that a lay person, such as defendant, need not have any legal training to know generally which personal items are his and which items were purchased by and belong to another person. In the present case, the testimony established that Ms. Page received the television as a gift from her parents in 1972 and purchased the stereo with her own funds prior to the time she and defendant were married. Although there are at times complicated legal questions of ownership presented to a judicial body, this case clearly does not involve one of those situations. Defendant therefore cannot claim that he was confused by the concept of ownership when he was well aware that the items in question belonged to Ms. Page.

■■ Furthermore, the evidence overwhelmingly supported the trial

court's findings that defendant's conduct was calculated to delay and hinder the judicial process. Defendant himself admitted that he would refuse to pay the judgment lawfully rendered against him. Considering this proclamation against his conduct at all of the hearings held in this case, we can only construe his actions as either attempting to mislead the court into ordering a seizure of property belonging to someone other than defendant or deceive the court into holding additional and costly hearings, thereby delaying satisfaction of the judgment. Accordingly, we conclude that the evidence established beyond a reasonable doubt that defendant wilfully and knowingly interfered with the administration of justice.

For the reasons stated, the order of the Circuit Court of Jefferson County finding defendant in contempt of court is affirmed.

Affirmed.

KUNCE and KASSERMAN, JJ., concur.