THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* DR. CLAUDE E. ROUSH, Superintendent of the Manteno Mental Health Center, *et al.*, Respondents-Appellants.

First District (3rd Division)   No. 81—3124

Opinion filed February 9, 1983.

Tyrone C. Fahner, Attorney General, of Springfield (Paul P. Biebel, Jr., Assistant Attorney General, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Lawrence R. Stasica, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

The trial court found the Manteno Mental Health Center and Dr. Claude E. Roush, Manteno's Superintendent, guilty of indirect criminal contempt of court because a patient who had been found not guilty of aggravated kidnaping by reason of insanity (NGRI) had escaped twice from Manteno. The trial court imposed no penalty on Manteno but placed Roush on court supervision. The court also fined Roush $1,500 or in the alternative ordered him to spend three hours in Cook County jail on four consecutive Saturdays rendering counselling or other services prescribed by the jail director. On appeal respondents contend that they were not proved guilty of indirect contempt beyond a reasonable doubt. Roush also contends that the fine of $1,500 was improper because he was not afforded a jury trial nor did he waive his right to a jury trial.

The trial court issued an additional order mandating Manteno and Roush to impose certain specific restrictions on the activities of all NGRI patients at Manteno. That order was the subject of a separate appeal and this court held that the trial court erred in assuming jurisdiction of the matter and reversed the order. *People v. Roush* (1982), 111 Ill. App. 3d 618.

The facts upon which the contempt proceedings were brought are not in dispute. Gary McConnell, an NGRI patient, escaped twice from Manteno in a two-month period. Both times he was apprehended by Lansing policemen near the home of the alleged victim of the kidnaping. When McConnell first arrived at Manteno, he was placed in Singer 2 Ward, the most secure ward in this medium security facility. This ward had windows with security screens on them. When given a ground pass to visit with his parents, he escaped. Upon his apprehension and return Manteno, the psychiatric review panel unsuccessfully recommended transferring McConnell to Chester Mental Health Center, a maximum security institution to which McConnell had once been committed. McConnell was placed again in Singer 2 Ward. While there, McConnell was "exceptionally well-mannered" and upon recommendation of the review panel, he was transferred to Cullen 1 Ward. This ward was less secure and had no screens on the window. Four weeks later, he escaped through his window.

Manteno had an average daily population of over 700 patients. In a 2½-year period, there were 823 unauthorized absences, but 578 of those absences were caused by voluntary admittees. An unauthorized absence meant that a patient was at a place other than that which he was authorized to be. Nearly 90% of the unauthorized absentees were returned from the immediate area. Among NGRI patients, there were 32 unauthorized absentees in the 2½-year period, with two such patients not returning.

Roush described the escape rate among NGRI patients at Manteno as a "large and alarming figure." Respondents attempted to correct this problem by hiring additional security guards, attempting to purchase security screens, and seeking to transfer NGRI patients to Chester. Roush also made administrative efforts to secure a change in Chester's admission criteria regarding NGRI patients.

In the rule to show cause why they should not be held in contempt of court, respondents were charged with impeding the orderly administration of justice under the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—2—4) because of their failure to contain McConnell. After the institution of the contempt proceedings, security screens were installed in Cullen 1 Ward. After respondents

were found guilty of contempt, they filed a petition for reconsideration stating that new policies regarding NGRI patients had been instituted. The number of escapes had been reduced drastically and one NGRI patient had been transferred to Chester. The trial court denied the petition for reconsideration.

Respondents contend that despite McConnell's two escapes, the trial court erred in finding them guilty of indirect criminal contempt of court. They correctly assert that the State had the burden of proving them guilty beyond a reasonable doubt. See *People v. Edwards* (1979), 69 Ill. App. 3d 626, 387 N.E.2d 969.

Indirect criminal contempt of court is generally defined as conduct outside the presence of the court calculated to embarrass, hinder or obstruct a court in the administration of justice or to lessen its authority or dignity, thereby bringing the administration of law into disrepute. (*People v. Edwards.*) Only contempt performed wilfully can constitute indirect criminal contempt. (*People v. Witherspoon* (1977), 52 Ill. App. 3d 151, 367 N.E.2d 313.) This intent may be either proved affirmatively or inferred from proof of the surrounding circumstances and the character of the action of the respondent. (*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50.) Whether proved directly or by reasonable inference, intent must be present.

Under the present facts and the foregoing criteria, we fail to see how respondents' action or inaction evidence any intent to impede the orderly administration of justice. The circumstances of McConnel's escapes demonstrate mistakes of professional judgment, the existence of serious security problems at Manteno, and possibly incompetency on the part of persons responsible. Nevertheless, they do not support directly or indirectly a finding of intent to show disrespect for the court or to hinder the administration of justice. Therefore, the finding of criminal contempt against respondents must be vacated.

In view of our holding, it is unnecessary to address the error in the imposition of Dr. Roush's fine.

For the reasons stated, the judgment of the circuit court of Cook County is vacated.

Judgment vacated.

McGILLICUDDY and RIZZI, JJ., concur.