THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DR. MARVIN ZIPORYN, M.D., Defendant-Appellant.

First District (4th Division)   No. 82—2770

Opinion filed February 9, 1984.

Mary A. Anast, and Lawrence Jay Weiner and Fredric Bryan Lesser, both of Weiner, Neuman & Spak, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Lawrence R. Stasica, and Timothy J. Joyce, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LINN delivered the opinion of the court:

Following a bench trial in the circuit court of Cook County, defendant, Marvin Ziporyn, was convicted of indirect criminal contempt. The behavior deemed contemptuous occurred during a presentencing hearing when Ziporyn, a defense witness, after leaving the witness stand, walked over to prosecuting counsel and whispered a vile, obscene remark.

On appeal, defendant contends that (1) the trial court erred in finding his conduct contemptuous, (2) the trial court's imposition of a sentence of periodic imprisonment and probation was an abuse of discretion, and (3) he was denied a fair trial.

We reverse the decision of the trial court.

FACTS

Following a jury trial for murder in the circuit court of Cook County, a presentencing hearing was held in the courtroom of Judge Richard L. Samuels to determine if Eunice Lyles, the convicted felon, would be sentenced to death. Defendant, Dr. Marvin Ziporyn, a psychiatrist, testified as an expert witness for the defense as to the mental condition of Eunice Lyles.

Defendant was cross-examined by Assistant State's Attorney Raymond Garza. Questioning by Garza was vigorous and aimed at impeaching defendant's credibility and character. Following this extensive and rather demeaning cross-examination, defendant stepped down from the witness stand. As he did so, the court called two of the trial attorneys before the bench. The attorneys proceeded to engage in an off-the-record discussion with the court.

During this time, defendant walked over to Garza, who was seated at the prosecution counsel's table, and attempted to gain his attention. When Garza declined to respond, defendant said in a whisper loud enough to be heard only by Garza and two spectators, "Garza, your mother sucks cock." This vile epithet was brought to the court's attention only when Garza jumped up, repeated the remark in a louder than conversational tone in front of the jury and all those present, and demanded that defendant be held in contempt of court.

In response to the aforementioned incident, the State filed a verified petition for contempt, alleging that defendant's conduct was an affront to the court and to the administration of justice. At the initial hearing on the petition and the State's motion for a rule to show cause, Judge Samuels, who had presided at the presentencing hearing, ordered the contempt cause transferred to the presiding judge *instanter* for reassignment in the interest of fairness to defendant. The contempt proceeding came on for hearing on August 13, 1982, before Judge Cornelius J. Houtsma, Jr.

The first witness for the State, Vadless Reese, a spectator and a relative of Lyle's victim, testified that she heard defendant make the remark to Garza although he made it in a tone of voice she characterized as a whisper. The State's second witness, Assistant State's Attorney Edward Cozzi, testified that he "plainly" heard defendant make the offending remark in a tone of voice he described as neither loud nor a whisper.

Garza then testified that defendant made the remark "loud enough so that only I, not the jurors who were near, could hear it." He stated that he did not know if any of the jurors heard the remark and that he did not ask any members of the jury if they had heard the

remark. The State did not call any jurors present at the incident to testify as to whether or not they heard the remark.

The first witness for the defense was Judge Samuels, who testified that he neither heard the remark nor observed the incident. Judge Samuels stated that it was Garza who called the statement to the court's attention when he repeated it in a louder than conversational tone in the presence of both the court and the jury. Judge Samuels testified that he did not notice any loud or boisterous conduct by defendant after defendant stepped down from the witness stand.

Defendant then testified on his own behalf. On cross-examination, he admitted making the offending remark but stated that he made it only after being provoked by an ethnic slur made to him by Garza after he had approached the counsel table and attempted to gain Garza's attention. Defendant testified that when Garza "*** insulted my people with [obscenity], I replied with the most venomous insult back to him" and that the insult was directed to Garza personally.

Judge Houtsma found that the testimony of the two witnesses who had actually heard the offensive remark was very credible. Conversely, he found defendant's testimony regarding the provocative slur by Garza incredible. Considering both the serious nature of the proceeding at which the conduct took place and the conduct itself, Judge Houtsma concluded that defendant's conduct

> "hindered or obstructed the court in its administration of justice, was in degradation of the authority and dignity of the court, and intended to bring the administration of justice into disrepute all beyond a reasonable doubt."

On this basis, defendant was found guilty of indirect criminal contempt and sentenced to one year misdemeanor probation, five weekends of which were to be spent in the Cook County Department of Corrections. Defendant now appeals.

OPINION

■■ ■ Defendant was convicted of indirect criminal contempt. Contempt is generally defined as conduct calculated to embarrass, hinder or obstruct a court in its administration of justice, to derogate from its authority or dignity or bring the administration of law into disrepute. (*People v. Siegel* (1983), 94 Ill. 2d 167, 171, 445 N.E.2d 762, 764.) Civil or criminal contempt, categorized as either direct or indirect, is essentially *sui generis* and is largely dependent for its classification upon the nature of the punishment imposed. (*People ex rel. Fahner v. Colorado City Lot Owners & Taxpayers Association* (1982), 108 Ill. App. 3d 266, 277, 438 N.E.2d 1273, 1280.) When the punish-

ment for the contemptuous conduct is imposed for a punitive rather than for a coercive purpose, the contempt is characterized as criminal rather than civil. *Kay v. Kay* (1974), 22 Ill. App. 3d 530, 318 N.E.2d 9 (abstract of opinion).

Direct contempt has been defined as,

> "*** one which takes place in the very presence of the judge, making all of the elements of the offense matters within the personal knowledge of the judge and tending directly to obstruct and prevent the administration of justice ***." (*People v. Howarth* (1953), 415 Ill. 499, 508, 114 N.E.2d 785, 790.)

Acts committed outside the physical presence of the judge but admitted in open court by the contemnor himself have also been held to constitute direct contempt. *People ex rel. Chicago Bar Association v. Barasch* (1950), 406 Ill. 253, 255, 94 N.E. 148, 149; *People v. Patrick* (1980), 83 Ill.. App. 3d 951, 954, 404 N.E.2d 1042, 1045 citing *People v. Berof* (1937), 367 Ill. 454, 11 N.E.2d 936.

Indirect contempt occurs outside the presence of the court and is therefore dependent for its proof upon extrinsic evidence. (*People v. Jashunsky* (1972), 51 Ill. 2d 220, 223-24, 282 N.E.2d 1, 4.) If some of the essential elements of the contempt are not personally observed by the judge, so that he must depend on statements made by others for his knowledge about those essential elements, the accused must be afforded notice, a fair hearing and an opportunity to defend. (*Johnson v. Mississippi* (1971), 403 U.S. 212, 215, 29 L. Ed. 2d 423, 426, 91 S. Ct. 1778, 1780.) Conversely, direct contempt, because it is not dependent upon extrinsic proof, may be adjudicated and punished summarily without the filing of charges, pleadings or trial. *People v. Thor* (1972), 6 Ill. App. 3d 1045, 1049, 286 N.E.2d 769, 772.

Where, as here, defendant has been accused of indirect criminal contempt and where a punitive sanction is sought, the State has the burden of proving the accused guilty beyond a reasonable doubt. (*People v. Edwards* (1979), 69 Ill. App. 3d 626, 629, 387 N.E.2d 969, 971.) Whether defendant has been proven guilty of indirect criminal contempt beyond a reasonable doubt is a question of fact to be determined by the trial court, and its decision will not be disturbed unless it is against the manifest weight of the evidence or the record discloses an abuse of discretion. *In re Estate of St. George* (1981), 99 Ill. App. 3d 388, 390, 426 N.E.2d 6, 7.

Here, the allegedly contemptuous conduct occurred outside the presence of the court, *i.e.*, defendant's conduct was neither heard nor seen by the trial judge. Therefore, extrinsic evidence was necessary to substantiate the charged contempt. While it is true that the

defendant subsequently admitted, in open court, making the offending remark, and while under some circumstances this could justify the court's summarily punishing it as direct contempt, such is not the case here. Because Judge Samuels ordered the cause transferred for reassignment prior to trial, the judge presiding at the contempt trial had no personal knowledge of the allegedly contemptuous conduct. Thus, the addition of defendant's admission did not bring all the essential elements of the contempt within the judge's personal knowledge so as to obviate the need for extrinsic proof. The State was, therefore, not relieved of its burden of proving defendant guilty beyond a reasonable doubt.

The State's burden, in the instant case, was not to prove that defendant made the offending remark, for the fact that he made it was undisputed. What the State must here have proved is that the remark, while reprehensible and totally inappropriate for a court of law, was, by legal standards, contemptuous. We find that the State failed to meet its burden.

Criminal contempt is a crime and, as such, consists of an intent and an act, both of which must be proved beyond a reasonable doubt. (*City of Chicago v. Hart Building Corp.* (1969), 116 Ill. App. 2d 39, 49, 253 N.E.2d 496, 501, *cert. denied* (1970), 398 U.S. 950, 26 L. Ed. 2d 290, 90 S. Ct. 1870.) The intent or *mens rea* required to sustain a conviction for criminal contempt has been rather circuitously defined as

> "*** an intent 'to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law in to disrepute.' "

*People ex rel. Kunce v. Hogan* (1976), 37 Ill. App. 3d 673, 683, 346 N.E.2d 456, 466, *aff'd in part and rev'd in part on other grounds* (1977), 67 Ill. 2d 55, 364 N.E.2d 50, *cert. denied* (1978), 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750.

This requisite state of mind has been more precisely but variously expressed by the courts as "intentional" (*People v. Edwards* (1979), 69 Ill. App. 3d 626, 629, 387 N.E.2d 969, 971), "with intent to undermine the court's authority" (*In re Estate of Shlensky* (1977), 49 Ill. App. 3d 885, 891, 364 N.E.2d 430, 435), "wilful" (*People v. Douglas* (1979), 73 Ill. App. 3d 520, 521, 392 N.E.2d 75, 77), "wilful and knowing" (*People v. Page* (1979), 73 Ill. App. 3d 796, 801, 392 N.E.2d 411, 413), "knew or should have known of wrongful conduct" (*In re Magnes* (1972), 8 Ill. App. 3d 249, 254, 290 N.E.2d 378, 392), and "with knowledge of the nature of one's act" (*In re Watts* (1978), 66 Ill. App. 3d 971, 974, 384 N.E.2d 453, 455). It has also been held that

whether contempt has been committed depends upon the act and not on the alleged intention of the offending party (*People v. Haas* (1981), 100 Ill. App. 3d 1143, 1148, 427 N.E.2d 853, 857), and that the failure of the prosecution to prove the state of mind of the defendant is not fatal because a contemptuous state of mind may be inferred from a contemptuous act (*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 60-61, 364 N.E.2d 50, 52, *cert. denied* (1978), 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750).

The seeming disparity displayed by the aforementioned decisions would appear to make the task of discerning the *mens rea* necessary to support a finding of criminal contempt a formidable one. However, a closer examination of the existing law reveals that (1) a single, consistent *mens rea* may be readily distilled from what at first blush appear to be inconsistent mental states, and (2) whether proved affirmatively or inferred from the character of the offending act itself, intent must, in all cases, be present. *People v. Roush* (1983), 112 Ill. App. 3d 689, 691, 445 N.E.2d 1230, 1232.

"Intentional," as used in the context of criminal contempt, appears to be synonymous with "volitional" or "voluntary" as opposed to "involuntary" or "unconscious." (*People v. Reeves* (1974), 23 Ill. App. 3d 579, 582, 319 N.E.2d 567, 570.) "Knowingly" and "wilfully" are, in this context, equivalent in meaning such that conduct performed "knowingly" or "with knowledge" is performed "wilfully." (*People v. Albarran* (1976), 40 Ill. App. 3d 344, 347, 352 N.E.2d 379, 382; Ill. Rev. Stat. 1981, ch. 38, par. 4—5.) And, finally, where, as here, an offense is defined in terms of a particular result, a person is said to act knowingly when he is consciously aware that his conduct is practically certain to cause the result. *People v. Herr* (1980), 87 Ill. App. 3d 819, 821, 409 N.E.2d 442, 445.

■ The single, consistent *mens rea* that emerges from the distillation of those cases expressing the necessary intent for criminal contempt is essentially that which was set forth by the seventh circuit in *United States v. Seale* (7th Cir. 1972), 461 F.2d 345, 368:

> "The minimum requisite intent is better defined as a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful."

Here, conduct is wrongful if it embarrasses, hinders, or obstructs the court in the administration of justice. Applying this standard to the instant case, the issue then becomes whether the State showed by evidence or by reasonable inference drawn from the character of the offending act itself that defendant knew or should have known that the vile remark whispered to prosecuting counsel during the course of a

hearing would embarrass, hinder, or obstruct the court in the administration of justice.

■ While we find that it would be obvious to any citizen that the vile language used by defendant has no place in a court of law or, for that matter, in polite society, we cannot conclude that defendant knew or should have known that the whispered remark would affront the dignity of the court or obstruct it in the administration of justice. The only way such knowledge reasonably could be imputed to defendant is if he could have foreseen the particular and actual effect of his conduct, for it is the effect, namely, Mr. Garza jumping up and loudly repeating the remark in front of the judge and jury, which embarrassed and obstructed the court.

As counsel for both sides point out, and as was pointed out by this court at oral argument, Mr. Garza had several options open to him by which he could have brought the offensive remark to the attention of the court. Given the serious nature of the presentencing hearing during which defendant whispered the remark, and the fact that the State was urging that the jury sentence the convicted murderer to death, the option that Mr. Garza chose, that of loudly repeating the offensive remark so as to disrupt the entire proceeding, was, to put it mildly, unforeseeable.

Because a contemptuous state of mind may be inferred from a contemptuous act (*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 61, 364 N.E.2d 50, 52, *cert. denied* (1978), 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750), the issue of whether defendant had the intent requisite for criminal contempt cannot be resolved without determining if the act itself was contemptuous. In making this determination, we must bear in mind that, while intent may be inferred from proof of the surrounding circumstances and from the character of the act (*People v. Siegel* (1983), 94 Ill. 2d 167, 171, 445 N.E.2d 762, 764), inferences which constitute elements of the offense, such as the requisite state of mind, should be based directly on established facts and not pyramided upon intervening inferences. *People v. Davis* (1977), 50 Ill. App. 3d 163, 168, 365 N.E.2d 1135, 1138.

The facts adduced at trial show only that (1) defendant made the offending remark, (2) the presiding judge did not hear the offending remark nor witness any loud or boisterous conduct by defendant after he left the witness stand, (3) two spectators overheard the remark, (4) the remark consisted of vulgar, highly offensive language and (5) was directed at Mr. Garza, an officer of the court. The State offered no proof that any of the jurors heard defendant's remark.

In *In re Little* (1972), 404 U.S. 553, 30 L. Ed. 2d 708, 92 S. Ct.

659, the United States Supreme Court drew a distinction between merely uttering a profanity and doing so in a loud and boisterous manner. (404 U.S. 553, 555, 30 L. Ed. 2d 708, 710-11, 92 S. Ct. 659, 660.) In *Little*, a State court had held a defendant in contempt when he stated in an argument that the court was "biased" and had "prejudiced" his case. On *certiorari*, the court reversed, finding that there was no indication that defendant's statements were uttered in a boisterous tone or in any way actually disrupted the proceedings.

> " 'The vehemence of the language used is not alone the measure of the power to punish for contempt. The fires which it kindles must constitute an imminent, not merely a likely, threat to the administration of justice. The danger must not be remote or even probable; it must immediately imperil. \*\*\* [T]he law of contempt is not made for the protection of judges who may be sensitive to the winds of public opinion. Judges are supposed to be men of fortitude, able to thrive in a hardy climate.' [Citation.] 'Trial courts \*\*\* must be on guard against confusing offenses to their sensibilities with obstruction to the administration of justice.' [Citation.]" (*In re Little* (1971), 404 U.S. 553, 555, 30 L. Ed. 2d 708, 711, 92 S. Ct. 659, 660.)

*Little* has been followed in Illinois in *People v. Roberts* (1976), 42 Ill. App. 3d 604, 606-07, 356 N.E.2d 429, and *People v. Hanna* (1976), 37 Ill. App. 3d 98, 345 N.E.2d 179.

In *Hanna*, defendant had been found in contempt for a statement made out of the presence of the jury but before spectators in the courtroom and addressed to the trial judge. Relying on *Little* to reverse the trial court decision finding contempt, the *Hanna* court stated:

> "The essence of the *Little* opinion seems to be that an isolated, disparaging statement not made in loud voice or boisterous manner but offensive to the sensibilities of the judge, although embarrassing to the court and derogating from its dignity, is not contempt." (*People v. Hanna* (1976), 37 Ill. App. 3d 98, 99, 345 N.E.2d 179, 180.)

Similarly, this court has held that the mere use of street vernacular which does not cause an imminent threat to the administration of justice does not usually constitute contempt. *People v. Wilson* (1975), 35 Ill. App. 3d 86, 88, 341 N.E.2d 34, 36.

■ Here, the offensive remark was made not to the trial judge but to the assistant State's Attorney. This distinction falls away, however, when we note that the assistant State's Attorney and any attorney taking part in the judicial process is an officer of the court. The

same tough standard should therefore be applied to him as is applied to the court itself. This standard dictates that defendant's act, a whispered epithet not made in a boisterous manner and posing no imminent threat to the administration of justice but offensive to the attorney to whom it was directed, does not constitute contempt. An officer of the court engaged in trial, like the trial judge himself, must be able to "thrive in a hardy climate."

In order for misconduct to constitute criminal contempt, there must be a union or joint operation of contemptuous act and criminal intention. (12 Ill. L. & Prac. *Contempt* sec. 21 (1983).) For the reasons stated above, we must necessarily find that no such union exists. In doing so, we stress that the vulgarity used by defendant, while not having been shown to satisfy the essential elements of criminal contempt, was thoroughly reprehensible and is in no way condoned by this court.

Our finding that the State failed to prove beyond a reasonable doubt that defendant's act displayed either the *mens rea* or the *actus reus* requisite for criminal contempt makes it unnecessary for us to reach the issues of the appropriateness of the sentence imposed or the alleged denial of a fair trial.

For the reasons set forth, we reverse the decision of the trial court.

Reversed.

JOHNSON and ROMITI, JJ., concur.