JOHN CRUZAT *et al.*, Plaintiffs, *v.* BOARD OF TRUSTEES OF THE VILLAGE OF MAYWOOD *et al.*, Defendants (The People of the State of Illinois, Petitioner-Appellee, *v.* Betty Kitch *et al.*, Respondents-Appellants).

First District (1st Division)    No. 83—0788

Opinion filed July 30, 1984.

William J. Harte, Ltd., of Chicago (William J. Harte and John B. Austin, of counsel), for appellant Betty Kitch.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Bridgman, and Gerald L. Maatman, Jr., of counsel), for appellant Seyfarth, Shaw, Fairweather & Geraldson.

Richard M. Daley, State's Attorney, of Chicago (Jane Clark Casey and Henry A. Hauser, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Respondents Betty Kitch and the law firm of Seyfarth, Shaw, Fairweather and Geraldson appeal from an order of contempt entered against them after it was revealed that Kitch, a member of the law firm, had moved for admission *pro hac vice* of a disbarred attorney who had misrepresented the status of his license to practice law in his home State. On appeal, both respondents raise the issue of whether they can be held in criminal contempt of court for aiding and abetting a nonlawyer in the unauthorized practice of law when it was agreed by all parties that they had no knowledge or intent to mislead the

court.

The facts in this case are not in dispute. The firm of Seyfarth, Shaw, etc., and an associate of that firm, Betty Kitch, were attorneys of record for plaintiffs in the case of *Cruzat et al.* v. Board of Trustees of the Village of Maywood. At the initial hearing on that case on February 17, 1983, Betty Kitch moved before the trial court that Curtis Lawson be admitted to practice *pro hac vice* on the basis of his license to practice law in the State of Oklahoma. The opposing counsel did not object and her motion was granted. She had also made the same motion earlier before another trial judge and it had been granted. Lawson and another attorney from the firm had signed the complaint. Lawson and another attorney from the firm also appeared before the court on February 18, and Lawson and Kitch appeared before the court on February 21. As a result of these appearances, Lawson and the firm succeeded in obtaining a temporary restraining order preventing the enforcement of certain amendments to the municipal code of the village of Maywood.

On February 24, 1983, Kitch and the firm first learned from defendants that Lawson was not licensed to practice law in Oklahoma. Kitch and the law firm promptly informed the trial court, who requested defendants to file a petition for rule to show cause why plaintiffs' counsel should not be held in contempt of court. Contempt hearings on the matter were held on March 2 and 11, 1983.

In lieu of an evidentiary hearing, the trial court accepted a stipulation that Kitch was an associate of the law firm and that she alone dealt with Lawson concerning his position as co-counsel in the *Cruzat* litigation. The parties also stipulated that Kitch and the law firm had not taken any affirmative steps to investigate the status of Lawson's license to practice law in Oklahoma after Lawson had affirmatively represented that he was a member of the Oklahoma bar. Further, the parties stipulated that neither Kitch nor anyone else in the firm had any knowledge that Lawson was not licensed at the time they moved that he be admitted *pro hac vice*. Members of the firm's executive committee appeared before the court on the first day of hearings and apologized to the court for what had occurred. On the second day of hearings, Kitch and the firm were both represented by separate counsel. The court issued a memorandum opinion holding Lawson in contempt of court for his false representations that he was a duly licensed attorney in Oklahoma and imposed a fine of $500. The court held Kitch in contempt of court based upon her appearance in court and representation that Lawson was a duly licensed attorney, and fined her $100. The court also held the law firm in contempt of court

and fined it $200.

In its opinion, the trial court stated that "There is no plausible reason for a trial court to ever grant a Rule 707 motion [Supreme Court Rule 707, 87 Ill. 2d Rule 707] if it cannot rely with confidence on the veracity of the movant and be satisfied beyond cavil that the candidate does in fact possess the qualifications asserted." The court determined that in order to measure up to the standard he was imposing under Rule 707, sponsoring attorneys need only invest in the cost of a postage stamp or a long distance phone call "to learn with certainty the truth of the fact which they assert."

Respondents argue before this court that although the trial court did not identify the nature of the contempt order it entered, the order should be classified as criminal rather than civil contempt since it concerned conduct which the court found to be directed against the dignity and authority of the court. (*People v. Gholson* (1952), 412 Ill. 294, 298, 106 N.E.2d 333, 336; *People v. Ziporyn* (1984), 121 Ill. App. 3d 1051, 460 N.E.2d 385.) Therefore, they argue, their conduct must be examined in light of the principles governing criminal contempt.

Respondent argues that the finding of contempt must be reversed because it is not proved or alleged that respondents acted intentionally, knowingly or wilfully. Respondent argues that criminal contempt is "a crime and, as such, consists of an intent and an act, both of which must be proved beyond a reasonable doubt." (*People v. Ziporyn* (1984), 121 Ill. App. 3d 1051, 1056, 460 N.E.2d 385, 389.) Evidence of a negligent act, respondents contend, is insufficient to support a sanction of criminal contempt since it has been held that "[a] negligent act is not a knowing or wilful act." (*People v. Witherspoon* (1977), 52 Ill. App. 3d 151, 154, 367 N.E.2d 313, 315.) Respondents argue that the trial court rejected the state-of-mind requirement for a finding of criminal contempt and, instead, imposed criminal punishment on the basis of its own conception of what the duties ought to be for the Illinois bar.

Petitioner agrees that the trial court's order of contempt may be characterized as criminal contempt. Petitioner asserts, however, that under Rule 707 local counsel assumes a duty to the court and the public to verify the qualifications of a person sponsored for *pro hac vice* admission. Petitioner contends that anyone who makes a representation in court has a duty to know if the representation is correct. Petitioner argues that Kitch's representation that Lawson was licensed in Oklahoma, when in fact, as she stipulated, neither she nor anyone else in the firm verified that he was duly licensed, constitutes a knowing and wilful misrepresentation of her own state of knowledge and,

therefore, is a valid basis for a finding of criminal contempt.

We need not determine whether respondents are charged with criminal or civil contempt since it is our conclusion that the evidence is insufficient to support a finding of contempt under Rule 707. It was stipulated before the trial court that respondents had no knowledge or reason to suspect that Lawson was not duly licensed in Oklahoma. Rule 707 does not mandate the requirement that a sponsoring attorney investigate the credentials of an out-of-State attorney. Indeed, the rule does not mention the need for a local attorney to file a motion for *pro hac vice* admission of a foreign attorney in order for a court to allow a foreign attorney to appear before it. Before the sanction of contempt of court can be imposed for failure to verify the license of an attorney submitted for admission *pro hac vice*, the Supreme Court Rules and disciplinary canons should specify what the duty of a sponsoring attorney is. The language of Rule 707 does not impose an affirmative duty on the sponsoring attorney and, therefore, cannot support the imposition of the contempt orders at bar. The trial court erred in the exercise of its discretion for holding respondents in contempt of court for a violation of Rule 707. See *Sunset Travel, Inc. v. Lovecchio* (1983), 113 Ill. App. 3d 669, 447 N.E.2d 891.

Both respondents contend that their conduct is in conformity with the duties and standards set forth by the supreme court in *People ex rel. Chicago Bar Association v. Novotny* (1944), 386 Ill. 536, 54 N.E.2d 536, *cert. denied* (1944), 323 U.S. 734, 89 L. Ed. 588, 65 S. Ct. 115. We agree. Novotny, a nonlawyer, was charged and found guilty of contempt for practicing law without a license. Haase, a lawyer with whom Novotny shared an office, was acquitted of the charge of aiding and abetting a nonlawyer in the unauthorized practice of law. Haase claimed that at no time did he have any information and knowledge that Novotny was not qualified to practice law in Illinois. The court stated that "[t]o aid and abet a violation of the law requires knowledge and intent," and the fact that Haase had not been charged with knowledge of Novotny's status and had denied such knowledge was "sufficient to purge him of the offense." 386 Ill. 536, 541-42, 54 N.E.2d 536, 538.

The supreme court determined that knowledge of whether or not a person's name appears on the roll of attorneys is not required of persons associating with, employing or transacting business with an attorney. The court further observed,

> "With many thousands of lawyers admitted to practice law, and the roll of attorneys being located in the capital of the State, it would be an unreasonable and intolerable burden upon

persons transacting business, or associating themselves with lawyers, to be subject to a charge of accessory to a contempt merely by failure to examine the roll of attorneys in the offices of the Clerk of the Supreme Court." 386 Ill. 536, 542, 54 N.E.2d 536, 538.

Petitioner attempts to distinguish *Novotny* by the fact that *Novotny* did not involve Rule 707 and was based on a misrepresentation made to the public rather than the court. We do not find these distinctions persuasive. Clearly, the court is better able to protect itself from the unauthorized practice of law than is the public. By employing the phrase "associating \*\*\* with lawyers," the court indicated that a lawyer unknowingly in a partnership arrangement with a nonlawyer holding himself out as a lawyer could not be held in contempt as an accessory to the unauthorized practice of law. Since the supreme court found that there is no duty for an attorney to check the license of an Illinois attorney with whom he or she associates, it was error to impose such a duty on an attorney associating with a foreign attorney.

We have been informed that this is a case of first impression. Considering the numerous motions for admission *pro hac vice* made daily in courts throughout our State, this situation cannot be so unique. There have been several instances in the past when it was discovered that a nonlawyer had been practicing law before Illinois courts undetected for many years. (*People ex rel. Chicago Bar Association v. Novotny* (1944), 386 Ill. 536, 54 N.E.2d 536; *People v. Cox* (1957), 12 Ill. 2d 265, 146 N.E.2d 19.) We have not found any reported cases in which the attorney associates or the law firm of a nonlawyer have been held in contempt for their unknowing aid in the illegal practice of law by the nonattorney. It is interesting to note that, in the *Cox* case, a prisoner challenged his conviction for murder when, five years after he was convicted, the man who had acted as his lawyer, one E. A. Simmons, was indicted for the unauthorized practice of law. Although Simmons held himself out to the public as a lawyer, his name never appeared on the roll of attorneys licensed by the supreme court. The court found under the facts of the case that representation by the nonlawyer Simmons did not deny Cox due process of law.

We also find problematic the ramifications of the duty imposed by the trial court. The trial court apparently imposed an affirmative duty to diligently investigate and disclose to the court any facts affecting the validity of the license of an attorney proposed for admission *pro hac vice*. Must the sponsoring attorney check the credentials of all members of an out-of-State firm who might appear with him on a given matter? How frequently must a sponsoring attorney call or

write the Attorney Registration and Disciplinary Committee of a sister State to verify the continued good standing of a foreign attorney he may deal with over a number of years? How current must the sponsoring attorney's information be in light of the fact that pending disciplinary proceedings are usually confidential until a sanction is imposed? These and many other questions arise here where respondents have been held in contempt for failure to perform a duty not previously articulated in rule or opinion.

For the foregoing reasons, the decision of the circuit court of Cook County holding respondents in contempt of court is reversed.

Reversed.

BUCKLEY, P.J., and GOLDBERG, J., concur.