(No. 59864.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. MARVIN ZIPORYN, Appellee.

*Opinion filed April 19, 1985.—Rehearing denied May 31, 1985.*

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Timothy J. Joyce, and Kevin Sweeney, Assistant State's Attorneys, of counsel), for the People.

Lawrence Jay Weiner and Frederic Bryan Lesser, of Weiner, Neuman & Spak, of Chicago, for appellee.

JUSTICE GOLDENHERSH delivered the opinion of the court:

In a bench trial in the circuit court of Cook County, defendant, Marvin Ziporyn, was convicted of indirect criminal contempt. Defendant appealed, the appellate court reversed (121 Ill. App. 3d 1051), and we allowed the People's petition for leave to appeal (94 Ill. 2d R. 315(a)). The facts are adequately set forth in the opinion of the appellate court and will be restated only to the extent necessary to discuss the issues.

Defendant, a psychiatrist, testified as an expert witness for the defense in a sentencing hearing in a capital case. He was subjected to cross-examination which the appellate court described as "vigorous," "extensive," and "rather demeaning." Upon leaving the witness stand, he approached the assistant State's Attorney who had cross-examined him and addressed to him a remark which the appellate court correctly describes as "a vile epithet." The testimony varies as to whether defendant's remark was whispered or delivered in a louder tone of voice. There is no question, however, that the assistant State's Attorney repeated the remark in a louder than conversational tone and demanded that defendant be held in contempt of court.

The People filed a verified petition for contempt, and the judge presiding at the hearing during which the incident occurred transferred the cause for reassignment

and trial before another judge. Defendant was found guilty of indirect criminal contempt and sentenced to one-year misdemeanor probation, five weekends of which were to be spent in the Cook County Department of Corrections.

The appellate court concluded that defendant, when whispering the obscene remark to the assistant State's Attorney, could not have foreseen that he would loudly repeat the remark and could not therefore have known that it would embarrass or obstruct the court in the administration of justice. It held that the comment made to the lawyer posed no imminent threat to the administration of justice and did not constitute contempt. It concluded that the People failed to prove the contemptuous act and the criminal intent required for criminal contempt, and reversed the judgment.

The People contend that it is "contumacious to address a form of obscene ritual fighting words to an officer of the court in the presence of jurors and within the hearing of spectators." They point out that two witnesses, one approximately four feet and the other approximately eight feet from the respondent, heard the insult. They argue that these words, spoken within the hearing of spectators, were clearly intended to impair the dignity and authority of the court.

We do not agree with the appellate court that the evidence does not show the intent necessary to sustain a finding of guilt of contempt of court. Defendant admitted that he made the statement, and although it is contended that it was said in a whisper, two witnesses testified that they heard him say it. Under these circumstances, it was possible that members of the jury might have overheard defendant's comments.

Defendant is a psychiatrist with considerable experience in court appearances. The intent to commit contempt of court may be inferred from the actions of the

contemnor. (*People v. Siegel* (1983), 94 Ill. 2d 167, 171; *People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 61.) Although, as the appellate court said, it is true that defendant could not foresee that the assistant State's Attorney would repeat the epithet and demand that defendant be held in contempt, it was certainly foreseeable, under the circumstances, that these "fighting words" would prompt action which would disrupt the court proceedings. In our opinion the finding of contempt is supported by the evidence.

Defendant contends that the circuit court erred in denying his oral motion for a change of venue. The reason for the requested change, as stated by counsel, was that "obviously my client would be prejudiced in this court. It seems that the State's Attorneys are the ones who are filing this and not the court ***." Simply stated, the argument appears to be that because the assistant State's Attorneys were the complainants rather than serving as counsel, the court was prejudiced. We find the contention to be without merit.

Defendant contends that the court's prejudice was demonstrated by disparaging remarks concerning counsel and by its wrongfully accusing defendant of obstructing the proceedings. From our examination of the record we conclude that these contentions are without merit.

Although the finding of contempt is affirmed, we conclude that on this record the imposition of a period of probation is unnecessary and excessive, and that a fine is adequate punishment for the offense. The testimony indicates that the conduct of the assistant State's Attorney was not beyond reproach, and his cross-examination of defendant appears to have been deliberately demeaning. That defendant's conduct was not flagrantly contemptuous is obvious because until the assistant State's Attorney repeated his comment, neither the court nor most of the people in the courtroom were aware that

anything untoward had occurred. As indicated by the record, defendant has testified on many occasions without any prior unseemly occurrence. Under the circumstances we are persuaded that an appropriate sanction is the imposition of a fine in the amount of $250.

For the reasons stated, the judgment of the appellate court is reversed and the judgment of the circuit court finding defendant guilty of contempt of court is affirmed. The cause is remanded to the circuit court of Cook County with directions to vacate the order of probation and fine defendant the sum of $250.

*Appellate court reversed;*
*circuit court affirmed*
*as modified.*

JUSTICE SIMON, dissenting:

It is regrettable that this court's time and attention must be given to a matter of this nature. Our system of justice requires that judicial proceedings be conducted with the dignity and decorum that are conducive to a rational and dispassionate determination of the facts at issue. This is particularly important at a criminal trial when a defendant's life hangs in the balance; inappropriate behavior in a courtroom may affect the fairness of the proceedings and the validity of the verdict. Thus, it is incumbent upon all who participate in a judicial proceeding, judges, attorneys and witnesses alike, to ensure that an atmosphere appropriate to a court of law is maintained. *United States v. Young* (1985), 470 U.S. ___, 84 L. Ed. 2d 1, 105 S. Ct. 1038; *Offutt v. United States* (1954), 348 U.S. 11, 17, 99 L. Ed. 11, 17-18, 75 S. Ct. 11, 15.

Unfortunately, in the capital case in which the incident giving rise to this proceeding occurred, such an atmosphere was not maintained. Instead, tempers flared, civility was forgotten, and inflammatory speech was

used. Too many aspects of the proceeding were more appropriate to a barroom than a courtroom. The observation in the majority opinion that the "testimony indicates that the conduct of the assistant State's Attorney was not beyond reproach" (106 Ill. 2d at 422) is, in my opinion, a gross understatement. Perhaps the best demonstration of the validity of this view is the court's opinion in *People v. Lyles* (1985), 106 Ill. 2d 373, filed simultaneously herewith. In the courtroom as well as in the judge's chambers, the assistant State's Attorneys engaged in overzealous, intemperate and unprofessional conduct that set the tone of the trial before the incident occurred that is the basis of the contempt charge, and that incident cannot be fairly considered apart from the conduct of the prosecutors. *Cf. Offutt v. United States* (1954), 348 U.S. 11, 13, 99 L. Ed. 11, 15, 75 S. Ct. 11, 13 ("Appellant's conduct cannot fairly be considered apart from that of the trial judge").

For example, during an *in camera* sidebar in the course of the sentencing hearing, one of the prosecutors said to the court:

"I can't believe [the defense attorney] makes an objection on hearsay, a God damn hearsay objection in a God damn sentencing hearing and judge, you entertain it ＊＊＊."

The defense counsel complained on the record that on several occasions, in the corridors and judge's chambers, the prosecutors had addressed a variety of insulting and vulgar epithets to him. During Dr. Ziporyn's cross-examination, the trial judge found it necessary to admonish one of the prosecutors for attacking the manner in which he ruled on objections.

The charged atmosphere created by such improper conduct was exacerbated during the State's cross-examination and re-cross-examination of Dr. Ziporyn, which the majority opinion acknowledges "appears to have been deliberately demeaning." During the cross-examina-

tion, the assistant State's Attorney repeatedly interrupted the witness, the defense attorney, and the court in a rude and strident manner and criticized the court's conduct of the proceedings. He asked a series of questions intended to ridicule Dr. Ziporyn's testimony, refused to allow him to respond to many questions, repeatedly withdrew questions after the court overruled defense objections to them, and addressed personal and insulting remarks to the witness.

When Dr. Ziporyn was excused from the stand, the court held a sidebar while the jury remained in the courtroom. The accounts of the assistant State's Attorney and Dr. Ziporyn as to what happened while the sidebar was taking place differ in only one respect. According to Dr. Ziporyn, he approached the prosecutor at the counsel table to ask for a copy of a newspaper article on which he had been questioned during cross-examination, and the prosecutor's response was, "Screw you, Jew." At his contempt hearing, Dr. Ziporyn explained that, because he had lost 67 relatives in the Holocaust, he found this slur especially offensive, and in reply whispered the remark that is the basis for the contempt charge against him.

The testimony of the assistant State's Attorney was that Dr. Ziporyn approached the counsel table, said "something about a newspaper," and when the assistant State's Attorney made a gesture with his hand to indicate to Dr. Ziporyn that he wished to be left alone, Dr. Ziporyn directed his remark to him, speaking in a tone "loud enough so that only I, not the jurors who were near, could hear it." He testified that Dr. Ziporyn whispered his remark, but denied he said anything to Dr. Ziporyn. The judge who presided at the contempt proceeding found the assistant State's Attorney's account credible and Dr. Ziporyn's version not credible.

I am disturbed by the cavalier dismissal of Dr. Zi-

poryn's testimony as a fabrication, especially in light of the assistant State's Attorney's prior behavior and apparent penchant for using abusive language. The judge's explanation for disbelieving Dr. Ziporyn's testimony regarding the ethnic slur and his reason for responding as he did was the judge's self-professed failure "to see any relationship between that alleged remark and the Holocaust or Auschwitz." According to the court, Dr. Ziporyn's testimony connecting his remark and the Holocaust "go[es] to the heart of his credibility."

A trial judge who hears and sees the witnesses is ordinarily in a better position to determine their credibility than a reviewing court judge. In this case, however, the trial judge's failure to understand the inciting effect that an anti-Semitic remark of the sort that Dr. Ziporyn testified was directed at him can have on one whose family was decimated in the Holocaust resulted in a misguided and insupportable conclusion regarding the witness' credibility. Had the trial judge reached a different conclusion regarding Dr. Ziporyn's credibility, his offensive remark could have been dismissed as conduct intended only to express disdain for the assistant State's Attorney and not intended to be contemptuous of the court or to disturb the courtroom proceedings. Nevertheless, in concluding that Dr. Ziporyn was erroneously held in contempt, I disregard Dr. Ziporyn's version of the facts and rely only upon the assistant State's Attorney's account.

Neither the judge nor the attorneys engaged in the sidebar heard Dr. Ziporyn's remark. No evidence was adduced that any member of the jury heard it. The majority opinion acknowledges that the evidence at the contempt hearing established that only two people, another prosecutor and a relative of the murder victim, had heard the remark until the prosecutor leapt to his feet and repeated it in a "heated" tone at a volume that ensured that everyone in the courtroom heard it.

The majority's statement that it was possible that members of the jury might have overheard Dr. Ziporyn is speculation. Clearly this speculation, unsupported by evidence, does not constitute the proof beyond a reasonable doubt required for a conviction of criminal contempt. Moreover, the majority's speculation is contravened by the assistant State's Attorney's testimony as well as by the majority's own observation that, until the prosecutor repeated Dr. Ziporyn's remark, "neither the court nor most of the people in the courtroom were aware that anything untoward had occurred" (106 Ill. 2d at 422-23).

The law does not support a finding of indirect criminal contempt even on the facts related by the assistant State's Attorney. As the appellate court noted in its careful analysis of the elements required to sustain a conviction for indirect criminal contempt, the State must prove beyond a reasonable doubt both a contemptuous act and an intent to " ' "embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute." ' " 121 Ill. App. 3d 1051, 1056.

I agree with the appellate court that the evidence does not support a finding that Dr. Ziporyn intended to disrupt the proceeding. Had that been his intention, he would not have whispered the remark to the prosecutor in a tone that was inaudible to the judge and the jury and all but two other persons in the courtroom. Moreover, he could hardly have foreseen that the assistant State's Attorney would disrupt the courtroom by loudly repeating the remark, since this is not the response one would expect from a responsible officer of the court. Indeed, one must question the assistant State's Attorney's motive in publicly repeating the remark. His behavior may have been intended to ensure that the jury heard the remark Dr. Ziporyn whispered in order to discredit

his testimony. Whatever his motive, however, the assistant State's Attorney's conduct invited a motion for mistrial in a criminal case in which the defendant's life was at stake. As an officer of the court, he had the obligation to avoid such a risk. Since such unorthodox conduct could not be predicted, Dr. Ziporyn could hardly have intended his whispered remark to "embarrass, hinder or obstruct [the] court."

The majority suggests that because the defendant "is a psychiatrist with considerable experience in court appearances" his intent to commit contempt should be inferred from his remark. However, an experienced expert witness would have knowledge of the demeanor expected of attorneys in a courtroom setting, and this would, on the contrary, give him reason to anticipate restraint by an attorney rather than explosive and disruptive behavior in the presence of a jury.

The majority continues: "Although, as the appellate court said, it is true that defendant could not foresee that the assistant State's Attorney would repeat the epithet and demand that defendant be held in contempt, it was certainly foreseeable, under the circumstances, that these 'fighting words' would prompt action which would disrupt the court proceedings." (106 Ill. 2d at 422.) I have difficulty following this reasoning. In view of the majority's statement that Dr. Ziporyn could not have foreseen that his offensive remark would be repeated in open court in the presence of the jury and the judge, how can he be held responsible for the disruption that occurred? The majority opinion validates the conviction of contempt because other "action" could foreseeably have followed Dr. Ziporyn's remark. I do not understand how the defendant can be held in contempt for other "action" which the majority fails to identify, yet characterizes as "foreseeable," and which, in any event, never occurred.

Moreover, Dr. Ziporyn did not perform the act that did obstruct the proceedings, which is required for a finding of criminal contempt. Had the assistant State's Attorney not blurted out the vulgar invective, no disruption would have occurred and there would have been no occasion for an order to show cause. It was clearly his conduct and not Dr. Ziporyn's that in fact disrupted the courtroom. The appellate court was therefore correct in holding that the State failed to prove beyond a reasonable doubt that defendant either displayed the intent or committed the obstruction required to establish criminal contempt. 121 Ill. App. 3d 1051, 1060; see also *United States v. Seale* (7th Cir. 1972), 461 F.2d 345, 366-71.

The majority has found mitigating circumstances sufficient to warrant imposing the modest sanction of a $250 fine instead of the probation with periodic confinement imposed by the trial court. My opinion is, however, that the circumstances which induce the majority to reduce the sanction indicate that Dr. Ziporyn's conduct, reprehensible as it was, did not constitute criminal contempt.