(No. 48553.—)

THE PEOPLE *ex rel.* PEYTON H. KUNCE, Judge, Appellant, v. DENNIS HOGAN *et al.*—(Dennis Hogan, Appellee.)

*Opinion filed June 1, 1977.*

56

William J. Scott, Attorney General, of Springfield, and James Flummer, State's Attorney, of Cairo (James B. Zagel, Jayne A. Carr, and Fred Montgomery, Assistant Attorneys General, of Chicago, and Charles D. Sheehy, Jr.,

58

and Bruce D. Irish, Illinois State's Attorneys Association Statewide Appellate Assistance Service, of counsel), for the People.

Melvin B. Lewis, of Chicago, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

This court granted leave to appeal from a decision of the appellate court in which one judge dissented. (37 Ill. App. 3d 673.) The appellate court reversed the circuit court of Alexander County, which held Dennis Hogan in contempt of court. The rule to show cause which had been filed contained three counts. The two counts which are the subject of this appeal charged that Hogan acted contemptuously when he, as a defense counsel in a criminal case, filed an action against the presiding judge in the criminal case after a verdict of guilty but prior to sentencing.

Hogan's client, James Coleson, had been tried and found guilty on two counts of perjury for falsification of applications for welfare benefits. The trial judge ordered a presentence investigation and directed Coleson and Hogan to cooperate with the probation officer conducting the investigation. On Hogan's advice, Coleson refused to answer certain questions.

Prior to the sentencing of Coleson, Hogan, on behalf of Coleson, filed a civil damage suit for $100,000 against Judge Kunce, who was the trial judge in the criminal case, two other judges of the circuit court, and the State's Attorney of Alexander County. The thrust of the civil action concerned the setting of bail for Coleson in the criminal case. The only allegations against Judge Kunce, however, dealt instead with the judge's action in consolidating the two actions against Coleson. Later, on the motion of the defendants in the civil case, the suit was dismissed by the trial court. The appellate court affirmed

the dismissal. *Coleson v. Spomer* (1975), 31 Ill. App. 3d 563.

After the civil suit was filed, Judge Kunce entered a rule to show cause charging Hogan and Coleson with contempt. Count I dealt with their failure to cooperate in the presentence investigation. Counts II and III related to the filing of the civil action. Count II concerned the timing of the civil suit, alleging that the filing of the suit prior to sentencing was contemptuous in that it tended to "delay, hinder or impede the administration of criminal justice" or to "cause the court to be embarrassed or *** prejudiced." Count III charged that the filing of the suit was contemptuous regardless of its timing because its purpose was to embarrass, threaten, impede, obstruct, or lessen the dignity or authority of the court.

The trial judge, since he was a defendant in the civil action, recused himself, and another judge presided at the contempt hearings. Both Hogan and Coleson were adjudged in contempt of court on all three counts. The appellate court reversed as to both defendants on all counts. Neither the reversal of count I nor the reversal as to Coleson on counts II and III have been appealed to this court. We are concerned only with the question whether Hogan, the attorney in the criminal case, committed contemptuous conduct by filing a civil suit against the trial judge prior to sentencing in the criminal action. The appellate court's reversal on this issue was based upon its belief that the State failed to show that Hogan had the requisite intent. That court stated: "[T]he State had to prove beyond a reasonable doubt that [Hogan] filed the civil complaint with the intent 'to embarrass, hinder, or obstruct' the circuit court in the administration of justice." 37 Ill. App. 3d 673, 683.

This court stated in *In Re Estate of Melody* (1969), 42 Ill. 2d 451, 452: "Contempt of court has been generally defined as conduct calculated to embarrass,

hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute." Direct criminal contempt may occur in either of two ways. The contemptuous acts may all take place in the presence of the judge so that all of the elements of the offense are within his personal knowledge. Alternately, the direct contempt may be committed out of the immediate physical presence of the judge but within an integral part of the court. (*People v. Jashunsky* (1972), 51 Ill. 2d 220, 223.) The filing of a document with the clerk of the court under the appropriate circumstances falls within this latter type of direct contempt, and it is not necessary that the document filed be contemptuous on its face. The very act of filing a document which tends to produce a result within the above-stated *Melody* definition constitutes a contempt. The filing in probate of a will known to be spurious is illustrative. In such a case, the mere filing, without more, is calculated and tends to embarrass or impede the court in the orderly administration of justice and is therefore contemptuous. See *In re Estate of Melody* (1969), 42 Ill. 2d 451; *In re Estate of Kelly* (1936), 365 Ill. 174.

Contrary to the holding of the appellate court, the failure of the prosecution to affirmatively prove the state of mind of the defendant is not fatal. In *Kneisel v. Ursus Motor Co.* (1925), 316 Ill. 336, a person, without having obtained leave of court, filed a petition in the circuit court of Cook County in a pending case involving certain assets of a receiver who had been removed by the court. On review this court stated that if the conduct constituted contempt it was direct contempt and stated: "Whether such a contempt has been committed depends upon the act and not the alleged intention of the offending party." 316 Ill. 336, 342.

Also, in *Anderson v. Macek* (1932), 350 Ill. 135, the court appointed a receiver who took possession of proper-

ty involved in a mortgage foreclosure and put a padlock on the door and posted notices on the building. The owner of personal property located on the premises had executed a chattel mortgage and the holder of the chattel mortgage, after having had prepared the necessary papers to levy on the chattels, placed them in the hands of a constable whom he thought was a deputy sheriff. The constable and the defendants entered the building and removed the chattels. This court stated: "Granting that defendants in error apparently thought, as there is some reason to believe, that they were warranted in their action ***, it does not follow that they were not guilty of contempt. Whether a direct contempt has been committed depends upon the act and not upon the alleged intention of the offending party." (350 Ill. 135, 137-38.) To the same effect, see *People v. Denson* (1975), 59 Ill. 2d 546.

The defendant contends that the rule to show cause alleges the specific intent of the contemnor and that it was therefore incumbent upon the State to establish that in some way the defendant intended to obstruct or impede the court or to embarrass it in the administration of justice. We do not agree. A contemptuous state of mind may be inferred from a contemptuous act as herein defined. The intent may be inferred from proof of the surrounding circumstances and from the character of the action of the defendant. See *People v. Johnson* (1963), 28 Ill. 2d 441; *People v. Coolidge* (1963), 26 Ill. 2d 533.

In an effort to explain why the civil suit had to be filed while the matter of sentencing Coleson was still pending, Hogan directs us to the case of *O'Shea v. Littleton* (1974), 414 U.S. 488, 38 L. Ed. 2d 674, 94 S. Ct. 669. He argues that *O'Shea* indicates that standing to contest the challenged bail practices in Alexander County would have been lost to him had he not filed his suit prior to sentencing. Assuming the correctness of this assertion, this does not justify the inclusion of Judge Kunce as a

defendant in the civil action. Judge Kunce did not participate in setting bail for Coleson. The only allegations in the damage suit dealing with Judge Kunce are that he "purported to exercise the administrative authority of the Illinois Supreme Court to effect an administrative flowing together" of the two cases filed against Coleson and that this was a "continuation of the wrongful attachment and false imprisonment" of Coleson which had begun with the setting of bail. Precisely what these allegations signify, we do not know. Presumably, Judge Kunce entered an order consolidating the two criminal cases, which, of course, has nothing to do with the setting of bail. Judge Kunce could have been omitted entirely from the civil action without doing violence to Hogan's interpretation of the holding in *O'Shea*. The fact that he chose instead to include the presiding judge in the criminal case as a defendant in a $100,000 damage suit lends itself to the reasonable inference that the suit was calculated to affect the outcome of the case (*People v. Goss* (1957), 10 Ill. 2d 533) or to embarrass, hinder, or obstruct the court or derogate from the court's authority or dignity or to bring the administration of law into disrepute.

Judge Clayton, after a hearing on the rule to show cause, found that the complaint in the civil case was not filed in good faith, but was filed to hinder, cause delay, or impede the administration of criminal justice, and to interfere with the judicial process, and embarrass the court so as to lessen the court's dignity and authority. These findings are fully supported by the evidence.

Hogan also asserts as error the denial of his motion for substitution of judges. After Judge Kunce recused himself, Judge Clayton, of the same judicial circuit, undertook the hearing of the contempt charges. Hogan then moved for a substitution of judges asking that Judge Clayton disqualify himself and all other judges of the circuit, and that he ask this court to assign a judge from another circuit to hear the case.

Section 114—5 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 114—5) provides that in criminal cases there is an absolute right to a substitution of judges from two judges on general allegations of prejudice. The statute also provides for an unlimited number of substitution of judges for cause. It is well settled that a general allegation of prejudice will not, however, support a motion to substitute more judges than is authorized by the statute, and the naming of a greater number of judges in a petition for substitution than is authorized by statute warrants the denial of the entire petition. (*People v. Myers* (1966), 35 Ill. 2d 311; *People v. Goss* (1960), 20 Ill. 2d 224; *People v. Chambers* (1956), 9 Ill. 2d 83.) The same principle applies in civil actions. (*Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247.) The request of the petition for substitution from all of the judges in the circuit, supported only by a general allegation of prejudice, justified Judge Clayton's denial of the petition.

We conclude that Hogan committed a direct contempt by filing a civil action against Judge Kunce while the sentencing of Hogan's client, Coleson, was being considered by the judge.

It appears that following the hearing on the rule to show cause the judge took the matter under advisement. At a later date he filed his order with the clerk of the circuit court. The order contained not only the finding of the court that the respondent was guilty of contempt but also imposed sentences on the respondent of $750 and 30 days in the county jail on each count. The jail sentences were to be run concurrently. It is apparent that counts II and III are alternate allegations of the same contemptuous conduct. Count III contains a reallegation of count II and in addition alleges certain acts which are supported by the specific findings of Judge Clayton referred to above. The respondent Hogan should not have been found guilty and sentenced on both counts. The sentence as to count II

should not have been imposed. The judgment of the appellate court as to count II is therefore affirmed.

The hearing on the rule to show cause concentrated on the question of contempt, and neither the State nor Hogan addressed the question of punishment. However, as noted above, the order entered by the judge not only found the respondent Hogan guilty of contempt but imposed the penalty of a $750 fine and a 30-day jail sentence. Standard 7.4 of the American Bar Association Standards Relating to the Function of the Trial Judge provides:

> "Before imposing any punishment for criminal contempt, the judge should give the offender notice of the charges and at least a summary opportunity to adduce evidence or argument relevant to guilt *or punishment.*" (Emphasis added.)

In order to conform, at least partially, to the suggested standard, we do not believe the trial court should have imposed a jail sentence in this case without giving Hogan an opportunity to present evidence in mitigation of the penalty. In the interest of judicial economy, however, we deem it advisable not to remand the cause for a hearing in mitigation as to the penalty but we will reverse the jail sentence imposed under count III and will affirm the fine of $750 imposed under that count.

Accordingly, the appellate court judgment is affirmed, except as to that portion of the judgment reversing the fine imposed against Hogan under count III; that portion of the appellate court judgment is reversed. The judgment of the circuit court is affirmed as to the imposition of the fine against Hogan under count III; its judgment is otherwise reversed.

*Appellate court affirmed in part*
*and reversed in part;*
*circuit court affirmed in part*
*and reversed in part.*