*In re* SUE WATTS.—(THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SUE WATTS, Respondent-Appellant.)

Second District   No. 77-527

Opinion filed December 13, 1978.

972

RECHENMACHER, J., specially concurring.

Laura A. Kaster, of Jenner & Block, of Chicago, for appellant.

William Sisler, State's Attorney, of Freeport (Phyllis J. Perko, of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GUILD delivered the opinion of the court:

Defendant appeals from an order finding her in direct contempt of court and sentencing her to 3 days in the Stephenson County jail, which she served.

On August 15, 1977, defendant appeared in the spectator section of Courtroom No. 2 in Stephenson County, Illinois wearing a T-shirt on which were printed the words "Bitch, Bitch" in letters at least 5 inches high.[1] The trial court ordered defendant to the bar where the following proceedings took place:

"THE COURT: * * * Let the record further show that at the time the Judge was on the bench, Sue Watts, aged nineteen years of age, appeared in this courtroom wearing an obscene T-shirt with a vulgarity printed thereon. She appeared in this Court and impenged [*sic*] the dignity of the Court.

Miss Watts, this is a Court of Law. We conduct these things with dignity. I wear a robe. That is the dignity of the Court. When you come in here with a T-shirt on that says, 'Bitch, Bitch' on it, then that impenges [*sic*] the dignity of the Court.

MISS WATTS: (Inaudible response.)

THE COURT: Now, Miss Watts, where did you get that coat?

MISS WATTS: (Inaudible response.)

THE COURT: What made you think you could come in here wearing that?

MISS WATTS: I completely forgot about it.

THE COURT: You're not very lady-like wearing that on the street, I don't think. As I say, it is a vulgarity. It borders on obscenity, and it impenges [*sic*] on the dignity of the Court when you come in here. I'm holding you in contempt of Court, and you are sentenced to three days in the County Jail. * * *"

Defendant raises five issues on appeal. In view of our opinion herein we will consider only the first three of these issues: (1) that summary contempt sanctions cannot be imposed where there is no actual disruption of the court; (2) that criminal sanctions are impermissible where there is no warning that specific conduct may result in criminal penalties; (3) that there is no evidence that defendant intended to violate a rule of court or to act contumaciously; (4) that defendant's first amendment right to freedom of speech was violated by this finding of contempt; and (5) that she was denied her fourteenth amendment right to procedural due process, particularly her right to allocution.

---

[1] It is obvious that the judge had told her she could not be in the courtroom wearing the T-shirt in question. She apparently left the courtroom, put on a jacket which covered the T-shirt and re-entered the courtroom. (The record here in question was transcribed from a tape.)

■■ We consider defendant's first three contentions together as disruption, warning and intent are all intertwined with the basic nature of a charge of contempt. Although summary criminal contempt is a crime in the ordinary sense, being a violation of the law punishable by fine or imprisonment or both (see *Bloom v. Illinois* (1968), 391 U.S. 194, 20 L. Ed. 2d 522, 88 S. Ct. 1477), it is unique in that it allows the trial court to partially define the crime itself as well as to judge innocence or guilt.

Although some case law has evolved with regard to the contempt power and appropriate courtroom attire (see Annot., 73 A.L.R. 3d 353 (1976)), there have been very few decisions concerning the attire of courtroom spectators, as opposed to attorneys or parties. Because of this is is understandably difficult for even a learned trial court judge to know the limits of his own contempt power.

■■ Criminal contempt of court is generally defined as conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute. In a direct contempt proceeding, that is, for contempt committed in the presence of the judge in court, which he observes and has personal knowledge of, no formal charge is filed and no plea, issue or trial is required. (*People v. Loughran* (1954), 2 Ill. 2d 258, 118 N.E.2d 310.) Nor is it necessary that the conduct committed constitute any criminal offense set forth in the Illinois Revised Statutes in order to be contempt.

■■ Nevertheless, contempt requires some form of constructive or actual knowledge of what conduct is forbidden in order that people can avoid such conduct. (See *People v. Rice* (1968), 96 Ill. App. 2d 253, 238 N.E.2d 266.) Thus, intent, or at least knowledge of the nature of one's act, is a necessary element of criminal contempt. This intent can be inferred from particular acts in particular cases; it does not always have to be affirmatively proven. (*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 364 N.E.2d 50, *cert. denied* (1978), 434 U.S. 1023, 54 L. Ed. 2d 771, 98 S. Ct. 750.) However, whether proven or reasonably inferred, it still must be present.

At issue in the instant case is whether the evidence of record could create a reasonable inference that defendant intended to act contumaciously. Such an inference from the meager facts before us would, in our opinion, be questionable. Hence, we reverse.

■■ There are three types of behavior on the part of courtroom spectators from which the required knowledge or intent might be inferred. First, it could be inferred from some obviously contemptuous statement directed at the court or at the judicial process. In such a case contempt would be obvious from the statement itself. Second, contempt can be inferred from some action, such as appearing naked in court, which does or is likely to

create a disturbance. (*People v. Collins* (1978), 57 Ill. App. 3d 934, 373 N.E.2d 750.) Both of these instances recognize a common sense standard. The contemnor is held to have notice as to what is considered contemptuous by the community or will be likely to create a disturbance in the courtroom. Third, the trial court has the option of directly notifying those in the courtroom that certain behavior will not be permitted. If someone persists in behavior clearly prohibited by the trial court, he may appropriately be held to be in contempt.

■■ Defendant's behavior in the instant case does not fit into any of these categories. The record is not clear that she had notice that the judge would view her behavior as contemptuous. She made no clearly contemptuous statement to the court, nor did she violate any order of the court. She was held in contempt merely for wearing the shirt in question. The only remaining issue is whether she could be held to a common sense knowledge that the shirt would be contemptuous or create a disturbance. Although the wearing of such a shirt to court would be unthinkable to those familiar with courts and court proceedings, given the absence of an indication in the record of any actual disturbance, and the modern use of the word "bitch" as a relatively innocuous synonym for complain, we are loath to hold the defendant to any such awareness.

■■ This is not to imply that the trial court had no right to be offended. We strongly concur that this shirt was not proper courtroom attire. The trial court clearly had the power to exclude the defendant from the courtroom until the offending garment was changed or covered. If, after being put on notice by an order of the court, defendant had remained in the courtroom wearing the offending shirt, she could have properly have been held in contempt. Here, however, defendant was not given a reasonable opportunity to alter her behavior. She was held in contempt for appearing in the courtroom with the shirt. It is obvious that the trial court was offended by the observation of defendant in this offensive attire. It must be recognized that such a situation will cause varying reactions in different judges. Here the trial judge was obviously offended, but his action in summarily holding the defendant in contempt and immediately sentencing her to three days in jail is not, in our opinion, warranted from the record in this case.

Having disposed of the case on the above grounds, we find it unnecessary to consider defendant's contentions concerning her first amendment right to free speech and fourteenth amendment right to procedural due process. We therefore reverse.

Reversed.

SEIDENFELD, P. J., concurs.

Mr. JUSTICE RECHENMACHER, specially concurring:

I concur with my colleagues, but wish to make the following additional comment.

While a T-shirt may be a trivial matter, the broader legal and philosophical questions raised by this case are both complicated and important. Individual taste in such matters as dress and expression is constitutionally protected, even where the mode of expression may be offensive to most people. (*Cohen v. California* (1971), 403 U.S. 15, 29 L. Ed. 2d 284, 91 S. Ct. 1780.) Thus, in *Cohen*, an obviously obscene phrase, printed on a jacket, was held to be a constitutionally protected form of expression, and the defendant's conviction for disorderly conduct, based solely upon the wearing of the jacket *in the corridors of a courthouse*, was reversed. At the same time, these very constitutional protections are largely dependent upon the power and dignity of courts to give them effect. Forms of individual expression which would do no more than annoy passers-by, if exhibited on a city sidewalk could, if exhibited in our courtrooms, so distract the proceedings and degrade the dignity of our courts, so as to impair their ability to administer the law and protect the rights of this defendant, and everyone else. How can these conflicting considerations be resolved? Obviously, only the courts can do so, using their best judgment and knowledge of the law in each matter, as it arises. In this case, the law provided only general guidance for the trial court; we have found no case directly on point, and none has been cited to us. *Cohen* might have provided dispositive guidance, had it not been for the fact that even Cohen had the good sense to remove his jacket and stand with it folded over his arm, when he entered a courtroom. 403 U.S. 15, 19 n.3, 29 L. Ed. 2d 284, 290 n.3, 91 S. Ct. 1780, 1785 n.3.