THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ARCHANGEL RODRIGUEZ, Contemnor-Appellant.

First District (2nd Division)    No. 79-914

Opinion filed December 9, 1980.—Rehearing denied January 13, 1981.

Edward Mogul, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr and Kathleen Warnick, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE PERLIN delivered the opinion of the court:

Appellant, Archangel Rodriguez, was found guilty of direct criminal contempt of court after he struck a police officer, Althea Fugiel, in the face with his hand when that officer stepped up before the trial court to testify on two traffic citations she had issued to him. Rodriguez was sentenced to serve five months in the Department of Corrections. From that order and sentence Rodriguez now appeals presenting the following issues for review: (1) whether his act of striking Officer Fugiel in the face with his hand in open court when his traffic cases were called constituted direct criminal contempt; (2) whether the trial court properly imposed a sentence of imprisonment on appellant for direct criminal contempt without allowing him to be represented by counsel; and (3) whether the trial court's sentence should be reduced.

For the reasons hereinafter set out we affirm the judgment of the trial court.

On April 19, 1979, Rodriguez appeared with counsel before the Honorable Angelo D. Mistretta on two traffic citations which had been issued to him by Officer Althea J. Fugiel. When Officer Fugiel stepped up before the court to testify on the cases, Rodriguez struck the officer in the face with his hand. His counsel withdrew from the traffic cases, and the trial judge, who had observed this conduct, found Rodriguez guilty of direct criminal contempt of court and sentenced him to serve five months in the Department of Corrections. He remained in custody from April 19, 1979, until May 18, 1979, when he posted bond pending appeal.

## I.

Appellant argues first that his punching of Officer Fugiel in the face was not an intentional or calculated act but "an irrational outburst" not intended to disrupt the courtroom proceedings. From this premise, he argues that his conduct may not be considered as direct criminal contempt.

■■ Criminal contempt has been defined as conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute. (*People v. Javaras* (1972), 51 Ill. 2d 296, 299, 281 N.E.2d 670.) A criminal contempt which is personally observed by the judge constitutes a direct criminal contempt. (*Javaras*, at 299.) In *People v. Carr* (1971), 3 Ill. App. 3d 227, 278 N.E.2d 839, the court upheld a finding of direct criminal contempt against a contemnor who had punched an assistant state's attorney in the nose at a sentencing hearing following his conviction for armed robbery. The court characterized as

"frivolous" contemnor's argument that his conduct was not direct contempt.

Proof of a contemptuous intent on Rodriguez' part is unnecessary to sustain this finding. A contemptuous state of mind may be inferred from a contemptuous act. The intent may be inferred from proof of the surrounding circumstances and from the character of the action of the contemnor. (*People ex rel. Kunce v. Hogan* (1977), 67 Ill. 2d 55, 61, 364 N.E.2d 50.) Here, Rodriguez' intent to punch Officer Fugiel is evident from the mere fact that he did punch her. Based on that act, the trial court found that Rodriguez "did knowingly and wilfully insult the dignity and decorum of the court and did interfere with the orderly administration of the court." It is difficult to argue, as appellant apparently intends, that in striking the officer in the face, he did not realize that he was acting contemptuously and disrupting the courtroom proceedings. His conduct is thus readily distinguishable from that of the defendant in *In re Watts* (1978), 66 Ill. App. 3d 971, 384 N.E.2d 453, cited by appellant.

■■ In *Watts*, a woman wearing a T-shirt on which the words "Bitch, Bitch" were printed walked into the spectator section of a courtroom. The reviewing court reversed the trial court's order finding the woman guilty of direct criminal contempt because her conduct, although unquestionably in poor taste, was not obviously contemptuous, was not likely to create a disturbance and was not in violation of any previous directive from the bench. Contempt may be inferred from some action which does or is likely to create a disturbance. By a standard of common sense, "[t]he contemnor is held to have notice as to what is considered contemptuous by the community or will be likely to create a disturbance in the courtroom." (*Watts*, at 975.) In the instant case the order finding Rodriguez guilty of direct contempt states that he did, in fact, create a disturbance and interfered with the orderly administration of justice. As in *Carr*, it would be frivolous to argue that Rodriguez did not know that his act was contemptuous.

## II.

In his second argument appellant contends that under the United States Supreme Court's decision in *Scott v. Illinois* (1979), 440 U.S. 367, 59 L. Ed. 2d 383, 99 S. Ct. 1158, the trial court could not properly sentence him to serve a period of imprisonment without allowing him to be represented by counsel. The People respond that because of the unique nature of direct criminal contempt, conduct such as that of appellant may be punished summarily without notice or a hearing and without the assistance of counsel.

Rodriguez' conduct clearly falls within the narrow class of direct criminal contempts. Where, as here, the conduct in question is committed in the presence of the court, neither notice nor pleading is necessary, and

the contemnor may be punished summarily without trial or evidence beyond that which the court personally observed as recorded in the contempt citation. (*People v. Graves* (1979), 74 Ill. 2d 279, 284, 384 N.E.2d 1311; *People v. Loughran* (1954), 2 Ill. 2d 258, 263, 118 N.E.2d 310.) Rodriguez argues that under *Scott v. Illinois* he was entitled to be represented by counsel before the trial court could impose a sentence of imprisonment. This argument misapprehends the import of the *Scott* opinion.

At issue in *Scott* was whether the right to be appointed counsel in misdemeanor cases resulting in *actual* imprisonment, first announced in *Argersinger v. Hamlin* (1972), 407 U.S. 251, 32 L. Ed. 2d 530, 92 S. Ct. 2006, extended to misdemeanor cases in which there was a *possibility* of imprisonment upon conviction. The Supreme Court held that it did not. Neither *Scott* nor *Argersinger* addressed the constitutionality of sentencing a person found guilty of direct criminal contempt to prison without allowing him the assistance of counsel. And in *People v. Collins* (1978), 57 Ill. App. 3d 934, 373 N.E.2d 750, the court rejected the argument that *Argersinger* requires the appointment of counsel in cases of direct criminal contempt. "The thrust of *Argersinger* is that the assistance of counsel is necessary to prepare a defense for a trial no matter how the offense is categorized or how short the term of imprisonment imposed. Here, however, we deal not with a trial situation but a summary contempt proceeding." *Collins*, at 937.

■■ Because of the unique circumstances present in direct criminal contempt cases, an order finding a person in contempt may be entered without prior notice, written charge, plea, issue or trial. (*People v. Siegal* (1948), 400 Ill. 208, 211, 79 N.E.2d 616.) The contemnor's right to procedural due process, including his right to counsel, is not impaired. *People v. Clark* (1972), 4 Ill. App. 3d 301, 305, 280 N.E.2d 723.

■■ Rodriguez' related contention that counsel was necessary to counter the influence of the assistant State's attorney who prepared the draft order and recommended a sentence of five months' imprisonment does not disturb our conclusion that counsel is not required in cases of direct criminal contempt. The prosecutor merely prepared a draft order at the court's request. The fact that the trial court imposed the sentence recommended by the prosecutor does not suggest that the court was improperly influenced by the assistant State's attorney or that any right of appellant was thereby jeopardized.

## III.

Finally, Rodriguez argues that his sentence of five months' imprisonment was excessive and should be reduced to time he has already served in custody, one month. Initially he notes that his conduct could have been prosecuted in a trial for aggravated battery where he might have

introduced evidence of his mental state as a defense or a mitigating factor. The possibility that certain conduct may violate a criminal statute of the State does not affect the power of a court to punish that same conduct as contempt. Ill. Rev. Stat. 1977, ch. 38, par. 1—3; *Dreman v. Fields* (1950), 406 Ill. 153, 157, 92 N.E.2d 654.

Supreme Court Rule 615(b)(4) (Ill. Rev. Stat. 1979, ch. 110A, par. 615(b)(4)) permits a reviewing court to reduce the punishment imposed by the trial court. Although the rule itself does not address the scope of this power or the circumstances under which it should be exercised, the decisions of our supreme court have firmly established that the imposition of a sentence is a matter of judicial discretion and that absent an abuse of this discretion, the sentence of the trial court may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) This statement of the scope of review permissible under the rule has been most recently reiterated by the supreme court in *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541. There the court found that section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1), which was intended to modify the standard of review in sentencing, was in direct conflict with the decisions of the supreme court construing Rule 615(b)(4). Because the rule was promulgated by the court pursuant to its exclusive constitutional authority to regulate appellate practice and procedure, the statute, which purported to expand the scope of review of sentencing, was held unconstitutional.

● 5 In support of his argument that his sentence should be reduced, Rodriguez cites *People v. Kennedy* (1963), 43 Ill. App. 2d 299, 193 N.E.2d 464. In *Kennedy* the court reduced the contemnor's six month sentence for slapping his 17-year-old stepdaughter to five days, time served. "In fixing a penalty for contempt of court, it must be made sufficient to vindicate the authority of the court, and of law, it must also inhibit further violations, and serve as a warning to others. A reasonable discretion must be allowed in weighing these factors." (*American Zinc Co. v. Vecera* (1949), 338 Ill. App. 523, 531, 88 N.E.2d 116.) In light of the conduct of appellant we cannot say that the trial court abused its discretion in sentencing him to serve five months in prison. As our supreme court has observed in *People v. Waud* (1977), 69 Ill. 2d 588, 373 N.E.2d 1, "It is not our function to serve as a sentencing court, and we will not substitute our judgment for that of the trial court merely because we might have imposed a different sentence had that function been delegated to us." *Waud*, at 596.

For the foregoing reasons we affirm the judgment finding appellant guilty of direct criminal contempt and the sentence imposed thereon.

Affirmed.

DOWNING and HARTMAN, JJ., concur.