# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *People v. Duff*, 2012 IL App (5th) 100479

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM C. DUFF, Contemnor-Appellant.–THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. WILLIAM C. DUFF, Contemnor-Appellant. |
| District & No. | Fifth District<br>Docket Nos. 5-10-0479, 5-10-0501 cons. |
| Filed | June 18, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In proceedings arising from a hearing on a visitation issue in a marital dissolution case and a request for an order of protection, the convictions for direct criminal contempt entered against defendant based on his conduct in the courtroom were reversed and the cause was remanded for a hearing to determine whether defendant suffered from a mental illness that affected his ability to form the requisite intent to commit direct criminal contempt. |
| Decision Under Review | Appeal from the Circuit Court of Fayette County, Nos. 10-CC-1, 10-CC-2; the Hon. S. Gene Schwarm, Judge, presiding. |
| Judgment | Reversed and remanded. |

Counsel on
Appeal

Michael J. Pelletier, Johannah B. Weber, and John H. Gleason, all of
State Appellate Defender's Office, of Mt. Vernon, for appellant.

Steve Friedel, State's Attorney, of Vandalia (Patrick Delfino, Stephen E.
Norris, and Rebecca E. McCormick, all of State's Attorneys Appellate
Prosecutor's Office, of counsel), for the People.

Panel

JUSTICE CHAPMAN delivered the judgment of the court, with opinion.
Justices Welch and Wexstten concurred in the judgment and opinion.

**OPINION**

¶ 1     The defendant appeals from two orders of contempt entered by the circuit court of Fayette
County. The orders of contempt stem from the defendant's behavior during two hearings that
took place on September 7, 2010, and September 27, 2010. On appeal, the defendant asks
this court to reverse both orders, either on grounds that the evidence was insufficient to
support the findings of contempt or alternatively on the basis that his mental capacity to
commit contempt was an issue not addressed by the court and therefore the contempt orders
must be vacated.

¶ 2                                      FACTS

¶ 3     The hearings were related to a visitation issue in a marital dissolution case and a request
for an order of protection. The defendant represented himself at both hearings.

¶ 4     The first hearing on various pending motions was scheduled for September 7, 2010. The
first motion called at this hearing was the defendant's motion to change venue. The
defendant filed a motion to change venue in both cases. His argument centered on his
perceived inability to get a fair trial with any judge in the Fourth Judicial Circuit. The
defendant made a lengthy statement to the court about claimed inequities in his life. The
court attempted to get the defendant to focus on arguments germane only to his motion for
a change of venue. In a statement on the record, the defendant blamed specific judges for
ruining his marriage and endangering his two children, alleging that the judges were allowing
his former in-laws to sexually molest his children and were covering up the evidence. He
interjected that President George W. Bush and State Senator Deanna Demuzio had confirmed
that these allegations needed to be addressed and investigated on a federal level. The
defendant spoke about how his mother had been murdered and how the Montgomery County
State's Attorney was involved in a cover-up of the murder. He also stated that his father's
car had been vandalized and that three fires had been set to his own property. At one point,
the trial judge asked the defendant to slow his rate of speech down because he was speaking
too fast for the court reporter to record everything that he said. The defendant informed the

-2-

court that he needed to file the "paperwork" from President Bush and Senator Demuzio. The court told him to physically step back, and it denied his request to file these documents, stating:

> "Mr. Duff, let me advise you regarding direct criminal contempt of court. If you rise again from your chair, and attempt to approach the bench, or if you raise your voice over mine, I'm going to find you in contempt of court and order that you be incarcerated. Now I want to make sure–and I think you know the rules we play by in this courtroom, but I want to make sure you know that. And you're not going to make a mockery of this proceeding this morning. I'm going to give you the opportunity to be heard and you need to keep your arguments germane to those motions. I'm not going to tolerate this behavior in my courtroom. And you can hold your hands up–and let the record reflect he holds his hands up as if he's done nothing wrong. Mr. Duff, you've been in a courtroom before and you know how to act properly. We show each other respect. I'm going to show you respect, I'm going to listen to you. You're going to show [Natalie Stout's lawyer] and his client respect, you're going to show the Court, the Judge, respect, and this proceeding respect."

The court took a five-minute recess in order to allow the defendant time to calm down and get his emotions under control. During the recess, the defendant filed a motion to recuse the judge. In an attempt to clarify, the court asked the defendant if this was intended to be a motion to substitute the judge for cause. The defendant responded in the affirmative. The court asked the defendant several times why he filed the motion, and the defendant merely repeated, "I think you know." The court attempted to explain to the defendant that his motion was faulty in that it was not signed and contained no affidavit. The exchange between the defendant and the trial judge continued, with the record detailing the fact that the defendant interrupted or spoke over the trial judge numerous times. The court noted on the record that the defendant was highly agitated, fidgety, and moving around rapidly. The court also noted that the defendant was making hand gestures and was being disrespectful. The court again admonished the defendant of the rules associated with presence and decorum in the courtroom. He was told that if he was unable to act in accordance with these rules, the court would find him in contempt. The defendant then told the court that he suffered from a hearing deficiency and that he could not hear the judge. The defendant threw his pen and a pair of glasses on the counsel table. The court noted on the record that the defendant had seemingly been able to hear and respond to direct questions up to that point in the hearing. The court began to sum up the events of the morning. The defendant raised his hand and the judge advised him to put his hand down. Then the defendant argued that he had a serious heart condition which required medication. The defendant stated on the record that any comments made by the trial judge describing his actions or demeanor in the courtroom were inaccurate. The defendant advised the court that he had appealed every order of contempt entered against him in the past, and if found in contempt that day, he would do so again.

¶ 5    The trial court found the defendant in criminal contempt of court by written order dated September 7, 2010. As a sanction for his contempt, the court sentenced him to immediate incarceration in the Fayette County jail for three days.

¶ 6    On September 27, 2010, the court revisited the visitation matter in the divorce case, as

well as the order of protection. The defendant began by filing a motion asking for evidence to be heard on the matter of his hearing disability. The tenor of the hearing was similar to that of the September 7, 2010, hearing. The defendant was again loud, argumentative, and disruptive. The court instructed the defendant not to interrupt the proceedings. At one point, the defendant told the judge that he was biased and was committing a federal crime. The court repeatedly admonished the defendant to obey the court and act in a respectful manner. The defendant largely ignored the court's admonishments. From the descriptions stated by the trial judge on the record, the defendant became highly agitated and began speaking rapidly. At one point, the defendant began arguing with a witness, his ex-wife, Natalie Stout. The court informed the defendant that he would not be allowed to make a mockery of the court. The defendant accused the trial judge of wasting his time and endangering his children. The trial judge took a recess and informed the defendant that if he continued to interrupt and act out, he would have to hold him in contempt again. After the recess, the defendant continued to act combatively with Natalie Stout. The trial judge indicated that he was confused by the defendant's behavior–extremely calm at times and very excitable at other times. He asked the defendant if he had taken anger management classes before, and the defendant acknowledged that he had done so. Ultimately, after more outbursts, the defendant was again found in contempt of court and sentenced to 90 days of incarceration in the county jail. The order of contempt was entered because of the defendant's contemptuous behavior: interrupting the court and opposing counsel, raising his voice inappropriately, using disrespectful voice inflection, making disrespectful comments about the judge and the court, using disruptive body language including shaking his head, waving his arms and getting out of his chair, and refusing to remain silent when ordered to do so.

¶ 7    On October 5, 2010, the court called the parties back to the courtroom to discuss the defendant's desire to appeal from the contempt orders and about the appointment of appellate counsel. One of the issues involved the appointment of a psychologist to evaluate the parties and their children. Judge Schwarm stated on the record that he was no mental health professional, and he stated the following about the defendant:

> "[I]n my observations of you over these past few hearings, you obviously suffer from [a] personality disorder, behavior disorder or some sort of mental illness, for you to act out the way that you do here in open court. These concerns have been raised by your children's mother and these concerns have been raised by your children."

At the conclusion of this hearing, the judge stayed, but did not vacate, the remainder of the defendant's contempt sentence. The court ordered the defendant released from jail.

¶ 8    From the criminal contempt orders of September 7, 2010, and September 27, 2010, the defendant appeals to this court.


¶ 9                          ISSUES, LAW, AND ANALYSIS

¶ 10   Contempt of court is classified as either civil or criminal. Criminal contempt of court is conduct by an individual "which is calculated to embarrass, hinder, or obstruct the court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute." *People v. Sheahan*, 150 Ill. App. 3d 572, 574, 502

-4-

N.E.2d 48, 50 (1986). The actions of the contemnor must be willful, as criminal contempt requires intent. *Id.* "Intent or at least knowledge of the nature of one's act is a necessary element of contempt because contempt requires some form of construction or actual knowledge of what conduct is forbidden." *Id.* (citing *In re Watts*, 66 Ill. App. 3d 971, 974, 384 N.E.2d 453, 455 (1978)). In a direct form of criminal contempt committed in the presence of the court, the intent required can be inferred from the nature of the contemptuous conduct at issue. *Id.*; *People v. L.A.S.*, 111 Ill. 2d 539, 543, 490 N.E.2d 1271, 1273 (1986). Because the contemptuous behavior occurred in the presence of the court, it is allowable for the judge to proceed on this personal knowledge and to summarily punish the contemnor without holding a hearing or allowing a defense to the charge. *Sheahan*, 150 Ill. App. 3d at 574, 502 N.E.2d at 50. These summary proceedings are not considered to be a violation of the contemnor's due process rights. *Id.* at 574-75, 502 N.E.2d at 51; *People v. Collins*, 57 Ill. App. 3d 934, 936, 373 N.E.2d 750, 751-52 (1978). The purpose of criminal contempt is to punish the contemnor. *People v. Goleash*, 311 Ill. App. 3d 949, 956, 726 N.E.2d 194, 199 (2000).

¶ 11    We will not overturn a trial court's finding of direct criminal contempt unless that finding is not supported by sufficient evidence. *People v. Graves*, 74 Ill. 2d 279, 284, 384 N.E.2d 1311, 1314 (1979).

¶ 12    We find that the issue of the defendant's ability to form the intent necessary to commit a criminal contempt of court due to mental illness is dispositive. We do not address whether or not the convictions were factually supported.

¶ 13    Summary adjudication of contempt is appropriate when the trial judge has all facts necessary to resolve the matter. However, if it appears that the defendant may have a mental health condition, that mental issue could bar criminal responsibility. *Sheahan*, 150 Ill. App. 3d at 576-77, 502 N.E.2d at 52 (quoting *United States v. Flynt*, 756 F.2d 1352, 1364-66 (9th Cir. 1985)). If there is a substantial issue of the defendant's mental capacity to commit contempt, an element of the crime of contempt is therefore not within the judge's knowledge. *People v. Willson*, 302 Ill. App. 3d 1004, 1006, 706 N.E.2d 1075, 1077 (1999). The matter of mental illness is considered to be beyond the personal knowledge of the trial judge. *Sheahan*, 150 Ill. App. 3d at 576-77, 502 N.E.2d at 52 (quoting *Flynt*, 756 F.2d at 1364-66). " '[T]he nature of [the defendant's] words and conduct would raise a substantial question as to mental capacity in the mind of any reasonable observer, a question that could be answered only on the basis of facts beyond the immediate knowledge of a district court.' " *Id.* at 577, 502 N.E.2d at 52 (quoting *Flynt*, 756 F.2d at 1366). If the record reflects a substantial issue of intent to commit contempt due to mental illness, the court should initiate a hearing on the individual's mental capacity. *Id.*; *People v. Willson*, 302 Ill. App. 3d 1004, 1006, 706 N.E.2d 1075, 1077 (1999).

¶ 14    Based upon our review of the record on appeal, we conclude that the matter of the defendant's mental illness could have impacted his ability to form the intent to commit direct criminal contempt. There were sufficient questions raised about the defendant's mental mind-set, not only because of his behaviors and statements in the courtroom but also based upon documents he attempted to introduce into evidence. Additionally, the visitation petition before the court at both hearings contained allegations that the defendant was mentally ill and

that his "irrational behavior" had been "escalating in recent months." The trial judge even made mention of Natalie's claims that the defendant was mentally ill. At one point, the trial judge commented on the record that it was as if the defendant had two separate personalities–a calm personality and a highly agitated personality. The judge stated that he did not know if the defendant had the capacity to help himself but that his courtroom behavior was "just not reasonable and rational." At the October 5, 2010, hearing, after which the court ordered that the defendant be released from jail, the judge noted that he was not a mental health expert, but suggested that the defendant suffered from a "personality disorder, behavior disorder or some sort of mental illness" as an explanation for his courtroom behavior.

¶ 15 We reverse the convictions of direct criminal contempt. We remand these cases to the trial court for a hearing to determine if the defendant has a mental illness that could have had a bearing on his ability to form the requisite intent for commission of direct criminal contempt.

¶ 16 Because we conclude that there was an issue of the defendant's ability to form the requisite intent for direct criminal contempt on the basis of mental illness, we do not address the defendant's alternate theory that his hearing loss was the foundation for many of his actions.

¶ 17                                    CONCLUSION

¶ 18 For the foregoing reasons, the judgments of the circuit court of Fayette County are hereby reversed and the causes remanded.

¶ 19 Reversed and remanded.