NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2023 IL App (4th) 220944-U

NO. 4-22-0944

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
July 18, 2023
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Adams County |
| AMBER D., | ) | No. 22CC4 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | John C. Wooleyhan, |
| | ) | Judge Presiding. |

_____

JUSTICE TURNER delivered the judgment of the court.
Justices Steigmann and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*: The circuit court did not err by finding defendant in direct criminal contempt.

¶ 2    Pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016), defendant, Amber D., appeals the Adams County circuit court's October 2022 order finding her in direct criminal contempt and sentencing her to 120 days in jail. On appeal, defendant argues the court erred by finding her in direct criminal contempt. We affirm.

¶ 3    I. BACKGROUND

¶ 4    Defendant is the mother of K.J., a minor child at issue in Adams County case No. 19-JA-70. On October 14, 2022, the circuit court held a rule to show cause hearing in case No. 19-JA-70. Defendant was to show cause why she should not be held in indirect civil contempt for not cooperating with the Department of Children and Family Services (DCFS) caseworkers and not following the service plans. At the time, DCFS and the court had not known K.J.'s

whereabouts since she left an Ohio residential facility in August 2022.

¶ 5        After hearing the parties' evidence and arguments, the circuit court began to explain its decision, and the following dialogue took place:

"THE COURT:  So based upon all that evidence, the Court can find today that [defendant] is once again in indirect civil contempt of court for failure to cooperate with the caseworkers, failure to cooperate with the service plans.  That the minor's whereabouts are still not known to the Court.  The child protection warrant is still pending.

The order today is going to show that the—as a sanction for the indirect civil contempt, [defendant] is being sentenced to the Adams County Jail.  She can purge herself of that contempt by producing the minor in open court or to the caseworker.

[DEFENDANT]:  How can I do that while in jail?

THE COURT:  You need to stop interrupting, ma'am.

[DEFENDANT]:  You're telling lies on me, man.  I have a right to defend myself.  I have a right to defend myself.  I haven't done wrong and the person that should be blamed for it is not being picked up and threatened my whole life.  They're going to leave me sit in this jail and we ain't never going to find her.

THE BAILIFF:  Ma'am, you need to stop yelling.

[DEFENDANT]:  I'm going to stand up for myself.  If I'm going to jail, I'm going to jail for something I did do, not something I didn't do.

THE BAILIFF:  Ma'am.

THE COURT:  [Defendant] can purge herself of contempt by producing

- 2 -

the minor in court or to the caseworker and the minor—mother would be in jail—

[DEFENDANT]: Something needs to be done about this judge.

THE COURT: —until that contempt is purged. We can provide in the order—

[DEFENDANT]: Well, we're f***.

THE COURT: We can provide in the order that the mother would have the opportunity to place telephone calls to the caseworker to—

[DEFENDANT]: How am I going to get ahold of anyone?

THE BAILIFF: You need to stop interrupting.

THE COURT: —provide information.

[DEFENDANT]: They didn't even let me use the phone the last time I was down there.

THE COURT: And we will set the cause for a review of the order of contempt that is being entered today. We can do that on Thursday, December the 8th, 10:00 o'clock.

[DEFENDANT]: It ain't my fault these guys can't do their job right and they know. You guys got me under surveillance. I don't know where she is at.

MR. JANSEN [(ASSISTANT STATE'S ATTORNEY)]: Sorry, Your Honor. What time?

THE COURT: 10:00. Cause can be recessed."

¶ 6    On October 19, 2022, the circuit court held a hearing. The court first noted it had purged the indirect civil contempt finding because K.J. had appeared in court. It then found defendant in direct criminal contempt for her actions at the October 14, 2022, hearing in case No.

19-JA-70.  The court explained its finding as follows:

"The record would show that when we were in court last time on October

the 14th.  During the court proceeding, [defendant], on the record and while court

was in session in open court, directed several obscene, profane and threatening

remarks to the Court, the court personnel, and while court was in session, and

thereby interrupted the business of the court and lessened the dignity of the court

in doing so.  And when that happens, the person has committed direct criminal

contempt."

¶ 7        The circuit court next addressed sentencing and gave defendant an opportunity to

speak.  Defendant stated the following:

"I'm very sorry about that outburst afterwards.  I was not indirectly saying

that.  I am very sorry.  I was upset.  I was upset.  I'm very, very sorry for my

behaviors to every one of you all."

Thereafter, the court sentenced defendant to 120 days in jail.  The court entered a written

contempt order that same day and one on October 20, 2022.

¶ 8        On October 20, 2022, defendant filed a timely notice of appeal in sufficient

compliance with Illinois Supreme Court Rule 303 (eff. July 1, 2017).  See Ill. S. Ct. R. 304(b)

(eff. Mar. 8, 2016) (stating the time for filing a notice of appeal from a judgment or order

appealable under Rule 304(b) is as provided in Rule 303).  Thus, this court has jurisdiction of

this appeal pursuant to Illinois Supreme Court Rule 304(b)(5) (eff. Mar. 8, 2016).

¶ 9                                II. ANALYSIS

¶ 10       Defendant argues her conviction for direct criminal contempt should be reversed

because her conduct was an expression of frustration and was not intended to embarrass, hinder,

or obstruct the circuit court's administration of justice.  The State disagrees, asserting the court properly found her in direct criminal contempt.

¶ 11	Under Illinois law, all courts possess the inherent power to punish contempt because such power is essential to a court's maintenance of its authority and the administration of judicial powers.  *People v. Simac*, 161 Ill. 2d 297, 305, 641 N.E.2d 416, 420 (1994).  "However, the exercise of such power is 'a delicate one, and care is needed to avoid arbitrary or oppressive conclusions.' "  *Simac*, 161 Ill. 2d at 306, 641 N.E.2d at 420 (quoting *Cooke v. United States*, 267 U.S. 517, 539 (1925)).  Our supreme court has defined criminal contempt of court "as conduct which is calculated to embarrass, hinder or obstruct a court in its administration of justice or derogate from its authority or dignity, thereby bringing the administration of law into disrepute."  (Internal quotation marks omitted.)  *Simac*, 161 Ill. 2d at 305, 641 N.E.2d at 420.  "A finding of criminal contempt is punitive in nature and is intended to vindicate the dignity and authority of the court."  *Simac*, 161 Ill. 2d at 305-06, 641 N.E.2d at 420.

¶ 12	Illinois law recognizes two types of criminal contempt, direct and indirect. See *People v. L.A.S.*, 111 Ill. 2d 539, 543, 490 N.E.2d 1271, 1273 (1986).  Here, the circuit court found defendant in direct criminal contempt.  Our supreme court has explained direct criminal contempt as follows:

> "Direct criminal contempt is contemptuous conduct occurring 'in the very presence of the judge, making all of the elements of the offense matters within his own personal knowledge.'  [Citation.]  Direct contempt is 'strictly restricted to acts and facts seen and known by the court, and no matter resting upon opinions, conclusions, presumptions or inferences should be considered.'  [Citation.]  Direct criminal contempt may be found and punished summarily because all elements

are before the court and, therefore, come within its own immediate knowledge. [Citations.] On appeal, the standard of review for direct criminal contempt is whether there is sufficient evidence to support the finding of contempt and whether the judge considered facts outside of the judge's personal knowledge. [Citation.]" *Simac*, 161 Ill. 2d at 306, 641 N.E.2d at 420.

¶ 13 Defendant first asserts she did not intend to embarrass, hinder, or obstruct the circuit court's administration of justice. "Both elements of criminal contempt, an intent and an act, must be proven beyond a reasonable doubt." *People v. Griffith*, 247 Ill. App. 3d 21, 23, 620 N.E.2d 1138, 1140 (1993). In the context of criminal contempt cases, intent has been defined as a voluntary act by one who knows or who should reasonably know that the act is wrongful. *Griffith*, 247 Ill. App. 3d at 23, 620 N.E.2d at 1140. Defendant insists she was just expressing frustration with being jailed in relation to her daughter's unknown whereabouts. However, she continued to interrupt the court after it and the bailiff told her not to do so. The bailiff also instructed her to stop yelling. Given the instructions, defendant knew what she was doing was wrong and continued to do so. Moreover, the record contains evidence defendant was familiar with court proceedings. Thus, even acting out of frustration, defendant knew her actions were wrong and inappropriate for a courtroom.

¶ 14 Defendant also asserts her behavior was not calculated to embarrass, hinder, or obstruct the circuit court's administration of justice. In support of her argument, one of the cases defendant cites is *People v. Hanna*, 37 Ill. App. 3d 98, 345 N.E.2d 179 (1976). There, the circuit court found the *pro se* defendant in direct criminal contempt after the defendant stated the following, " 'The way things are going now my side ain't ever going to be heard—uh—but I'm going to get it—I'm going to get it on the record. I'm going to make a record, because I know

what happened.  This Court has messed up so much already it's pathetic.' " (Emphasis omitted.) *Hanna*, 37 Ill. App. 3d at 99, 345 N.E.2d at 180.  This court reversed and noted "an isolated, disparaging statement not made in loud voice or boisterous manner but offensive to the sensibilities of the judge, although embarrassing to the court and derogating from its dignity, is not contempt."  *Hanna*, 37 Ill. App. 3d at 99, 345 N.E.2d at 180.

¶ 15    The facts of this case are distinguishable from those in *Hanna*.  Here, defendant was represented by counsel at the hearing in case No. 19-JA-70.  Thus, she was not the person responsible for making a record on her behalf.  Her appointed counsel was the one to make any necessary statements regarding the indirect civil contempt finding in case No. 19-JA-70.  Moreover, defendant's outburst was not isolated, but rather, her comments continued, despite being told multiple times to stop.

¶ 16    This case is also distinguishable from *People v. Watts*, 66 Ill. App. 3d 971, 975, 384 N.E.2d 453, 456 (1978), where the reviewing court reversed the circuit court's direct criminal contempt finding.  There, the defendant appeared in the spectator section of courtroom wearing a T-shirt with the words " 'Bitch, Bitch' " on it.  *Watts*, 66 Ill. App. 3d at 973, 384 N.E.2d at 454.  The court summarily held the defendant in contempt and immediately sentenced her to three days in jail.  *Watts*, 66 Ill. App. 3d at 973, 384 N.E.2d at 454-55.  In reversing the contempt order, the reviewing court noted defendant was not given a reasonable opportunity to alter her behavior.  *Watts*, 66 Ill. App. 3d at 975, 384 N.E.2d at 456.  Here, defendant was told several times her behavior was inappropriate.  Moreover, the record shows she was familiar with courtroom procedures.

¶ 17    Additionally, we disagree with defendant's suggestion the circuit court had to warn defendant of the potential of a contempt finding if her disruptive behavior continued.

- 7 -

Defendant's actions took place at a hearing for her to show cause why she should not have been held in indirect civil contempt for not cooperating with DCFS and the court. Also, in finding defendant in indirect civil contempt, the court took judicial notice of earlier contempt proceedings in this case involving defendant and the minor child. Thus, defendant was aware her actions could result in her being held in contempt.

¶ 18    Last, contrary to defendant's assertion, her statement "we're f***" was obscene and profane, regardless of whom it was directed towards. Such behavior and the continued interruptions did derogate the circuit court's authority and dignity. Moreover, defendant's actions at the hearing did hinder the court proceedings, as the court had to continually stop to avoid talking over defendant and had to repeat itself due to defendant's interruption. We do recognize the circuit court did not *summarily* find defendant in contempt for her conduct but did so five days later. However, defendant does not argue the delay constitutes or demonstrates error.

¶ 19    Accordingly, we find the circuit court did not err by finding defendant in direct criminal contempt.

¶ 20                           III. CONCLUSION

¶ 21    For the reasons stated, we affirm the Adams County circuit court's judgment.

¶ 22    Affirmed.