No. 364 May 6, 2026 263

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

C. M.,
*Defendant-Appellant.*

Klamath County Circuit Court
25CN00126; A186506

Alycia E. Kersey, Judge.

Submitted March 19, 2026.

Liza Langford filed the briefs for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Interim Deputy Attorney General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

## ORTEGA, P. J.

Appellant appeals from a trial court judgment that found him in contempt during civil commitment proceedings. He argues for the first time on appeal that the trial court erred by finding that he acted "willfully."[1] Appellant failed to object to that finding but argues that we should correct it as plain error. We conclude that any error was not plain and affirm.

Appellant asks us to review *de novo*, which we may exercise discretion to do in civil commitment proceedings. *See State v. L. R.*, 283 Or App 618, 619, 391 P3d 880 (2017). However, the summary contempt ruling at issue is not suitable for review *de novo*, and we decline to exercise such review in this posture. Appellant also asserts a legal argument for the first time on appeal, which he argues we should review for plain error. ORAP 5.45(1). "An error is 'plain' when it is an error of law, the legal point is obvious and not reasonably in dispute, and the error is apparent on the record without *** having to choose among competing inferences." *State v. Stone*, 324 Or App 688, 693, 527 P3d 800 (2023).

The civil commitment proceeding began with the court and appellant discussing his behavior because appellant's attorney requested removal of appellant's handcuffs. The court asked appellant if he was "going to be safe" without the handcuffs, and he responded, "Yes, Your Honor." The court then explained that if appellant started to "become unsafe" he would again be handcuffed. Appellant responded, "I think that would be unwise for me to do, since I'm here for that reason exactly." He then sat through the proceedings without any noted interruption or disruption until the court began announcing its ruling.

During the court's ruling, appellant repeatedly interrupted the court to challenge the court's findings. The

---

[1] Appellant originally filed a *Balfour* brief and the case was submitted for decision pursuant to ORAP 5.90(2). The court, on review of the record pursuant to ORAP 5.90(3), identified arguably meritorious issues and requested supplemental briefing from the parties on those issues. After the parties submitted that briefing, the case was submitted for decision by a three-judge panel. *See State v. Campbell*, 344 Or App 463, 465, 580 P3d 914 (2025) (explaining that, after the court identifies an arguably meritorious issue under ORAP 5.90(3), the court will "notify counsel, and the responsibility for presenting that issue, and identifying any others, shifts back to counsel").

court told appellant that "this isn't a conversation" and appellant asserted that the court was committing contempt. After more interruptions, the court instructed appellant to remain silent, and he repeatedly refused. The court asked him if he wanted to hear what the court had to say or wanted the court "to tell them to take you out of here" and appellant continued speaking. Eventually, the court told him that if he continued speaking, he would be "in contempt" and appellant continued speaking. He now appeals the resulting order of contempt.

Appellant argues for the first time on appeal that the trial court erred by finding that he acted "willfully." He asserts that the trial court needed to affirmatively find that his conduct was not the result of mental illness, given that it occurred during a commitment proceeding. As explained below, this case involves important questions as to how the contempt power should be wielded in civil commitment proceedings, but we cannot say that the points of law are obvious such that appellant's arguments meet the standard for reversal of unpreserved errors.

We question the extent of the court's authority to hold someone in contempt while also finding them to be subject to civil commitment due to mental illness. For one thing, it is arguable whether the contempt power, as wielded in this context, is even compatible with Oregon's statutory scheme for civil commitment and is an available remedy in those proceedings. *Cf. Matter of Tarpley*, 581 NE2d 1251, 1252 (Ind 1991) ("Instead of holding a mentally-ill patient in contempt of court for failing to comply with the court's order requiring out-patient medication, the proper procedure would have been to revoke the out-patient determination and commit the patient to an appropriate facility as an in-patient. Placing a mentally-ill person in jail for contempt of a court order, as opposed to committing such person to a mental institution where his medical needs would be properly monitored, was contrary to the statute."); *see also State v. T. L. B.*, 335 Or App 225, 230, 558 P3d 861 (2024), *rev allowed*, 373 Or 556 (2025) ("Generally, commitment proceedings based on mental incapacity are permissible without turning *** into criminal cases, so long as the detention is for a non-punitive purpose and ends with that

purpose. It is the punitive use of detention, not the detention as such, that defines the criminal offense." (Internal quotation marks and citations omitted.)).

Beyond that, there are significant due process considerations at stake when there is a possibility that the manifestation of mental illness might be considered "willful" for purposes of contempt, such that courts have imposed procedural safeguards. In *McNeil v. Dir., Patuxent Inst.*, 407 US 245, 251, 92 S Ct 2083, 32 L Ed 2d 719 (1972), the Court made the following observations about the intersection of willfulness and mental illness:

> "[I]f confinement is to rest on a theory of civil contempt, then due process requires a hearing to determine whether petitioner has in fact behaved in a manner that amounts to contempt. At such a hearing it could be ascertained whether petitioner's conduct is willful, or whether it is a manifestation of mental illness, for which he cannot fairly be held responsible. *Robinson v. California*, 370 US 660, 82 S Ct 1417, 8 L Ed 2d 758 (1962). Civil contempt is coercive in nature, and consequently there is no justification for confining on a civil contempt theory a person who lacks the present ability to comply. *Maggio v. Zeitz*, 333 US 56, 68 S Ct 401, 92 L Ed 476 (1948)."

Moreover, given the nature of civil commitment proceedings, it is at least arguable whether a petitioner's mental health condition is within the "judge's knowledge" for purposes of summary contempt, or whether the court must first make a determination about the person's mental capacity. *See People v. Duff*, 970 NE2d 1281, 1286 (Ill App Ct 2012) ("Summary adjudication of contempt is appropriate when the trial judge has all facts necessary to resolve the matter. However, if it appears that the defendant may have a mental health condition, that mental issue could bar criminal responsibility. If there is a substantial issue of the defendant's mental capacity to commit contempt, an element of the crime of contempt is therefore not within the judge's knowledge. The matter of mental illness is considered to be beyond the personal knowledge of the trial judge. *** If the record reflects a substantial issue of intent to commit contempt due to mental illness, the court should initiate a

hearing on the individual's mental capacity." (Internal citations omitted.)).

Despite our questions about the court's use of the contempt power in a civil commitment proceeding, the answers on this record are not obvious or beyond reasonable dispute. And, because none of these issues were raised below, that is the standard by which we must assess reversible error. Nor can we otherwise say that the court's finding that appellant acted willfully was plain error under these circumstances. The record would support a finding that, despite his mental illness, appellant conformed his conduct to the trial court's instructions throughout the proceedings, becoming disruptive only at the end and after repeated instructions to stop and warnings regarding the consequences. Based on appellant's actions throughout the hearing, it was not plainly erroneous for the court to conclude that appellant willfully ignored the court's instructions, which supports its finding of contempt.

Affirmed.